# IN THE SUPREME COURT OF TEXAS

══════════
No. 10-0933
══════════

IN RE TOYOTA MOTOR SALES, U.S.A., INC. AND VISCOUNT PROPERTIES II, L.P., D/B/A HOY FOX TOYOTA/LEXUS, RELATORS

══════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
══════════════════════════════════════════════

**Argued January 8, 2013**

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court.

JUSTICE LEHRMANN filed a concurring opinion, in which JUSTICE DEVINE joined.

JUSTICE BOYD did not participate in the decision.

We have recently held that a trial court must explain with reasonable specificity why it has set aside a jury verdict and granted a new trial.[1] Without such an explanation, parties in the case can only speculate about why the court ostensibly circumvented a critical constitutional right. The parties—and the public—are entitled to know why the trial court believes an injustice would occur if the jury's verdict were to stand. In this case, the jury returned a verdict, and the trial court rendered a judgment in conformity with it. The trial court then ordered a new trial. The order is reasonably specific. Its stated reasons are superficially sound. The question is whether an appellate court may, in an original proceeding, determine whether the reasonably specific and legally sound

---

[1] *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204 (Tex. 2009).

rationale is actually true. And if it is not true, we must decide whether the trial court abuses its discretion by granting a new trial.

We hold that an appellate court may conduct a merits review of the bases for a new trial order after a trial court has set aside a jury verdict. If the record does not support the trial court's rationale for ordering a new trial, the appellate court may grant mandamus relief. We conditionally grant relief.

## I.   Background

### A.   Facts

Richard King was driving his Toyota 4Runner along a highway when a commercial truck turned onto the road in front of him. King swerved to avoid the truck but lost control of his car, which rolled over several times. King was ejected from the vehicle and died a few hours later.

### B.   Procedural History

#### 1.  Trial Court

King's family sued Toyota and the local Toyota dealership for strict products liability, negligence, wrongful death, and survivorship.[2] The Kings contended that the 4Runner's allegedly defective seat belt system caused his ejection from the car and his subsequent death.

The family asserted that King was wearing his seat belt at the time of the accident. But in a videotaped pretrial deposition, State Trooper Justin Coon, who responded to the emergency call

---

[2]  The Kings sued the commercial truck driver and his employers as well, but those defendants are no longer parties to this dispute.

and arrived on the scene to investigate, testified that he believed that King was not wearing the belt at the time of the rollover. Specifically, Officer Coon testified:

**Q:**             . . . How do you know about the position of the seat belt?

**Officer Coon**:     Well, if he was wearing it or if it broke off, it would have been in a position where it wasn't in. Obviously, he wasn't wearing it, because it was in a straight-up position, like it had been sitting there a while, and it hadn't been pulled out.

**Q**:             So the seat belt was stowed?

**Officer Coon**:     Yes.

**Q**:             Did you inspect the webbing, to see if there were any marks on it?

**Officer Coon**:     There was not any.

**Q**:             And you did look at it?

**Officer Coon**:     I always look at the seat belts, if they are not wearing one.

**Q**:             Did you pull the seat belt out?

**Officer Coon**:     No, I did not.

The Kings filed a motion to preclude at trial "[a]ny reference to the purported opinions of Officer[] Justin Coon . . . since [he] ha[d] never been identified by Defendants as [an] expert witness[] in this case." At a pretrial hearing, the Kings clarified that they would not object to Officer Coon's testifying about his observations of the accident scene as long as he did not offer his opinion that King had not been wearing a seat belt when the car rolled over. The Kings later filed an additional motion in limine to bar "[a]ny testimony from any purported fact witness including law

3

enforcement officials, investigators, emergency personnel, medical personnel and bystanders that Richard King was not wearing his seatbelt . . . before or during the [ac]cident." The trial court granted these motions.

The case proceeded to trial in May 2009.[3] Despite the limine orders, Officer Coon's statement found its way into the record, in front of the jury, three times before the close of evidence. Because the trial court's order cites Toyota's "prejudicial," "brazen[]," and "inflammatory" reference to Officer Coon's seat belt testimony as a basis for granting a new trial, it is important to detail precisely the manner in which the information was conveyed to the jury.

The initial instance occurred when Toyota's counsel introduced Officer Coon's video deposition. To comply with the court's limine orders, Toyota had redacted portions of the officer's testimony, and the relevant passage was edited and played into the record as follows:

**Q**: ~~. . .~~ How do you know about the position of the seat belt?

**Officer Coon**: ~~Well, if he was wearing it or if it broke off, it would have been in a position where it wasn't in. Obviously, he wasn't wearing it, because~~ it was in a straight-up position~~, like it had been sitting there a while, and it hadn't been pulled out~~.

**Q**: So the seat belt was stowed?

**Officer Coon**: Yes.

**Q**: Did you inspect the webbing, to see if there were any marks on it?

**Officer Coon**: There was not any.

---

[3] An earlier trial ended in a mistrial.

4

**Q**: And you did look at it?

**Officer Coon**: I always look at the seat belts~~, if they are not wearing one~~.

~~Q: Did you pull the seat belt out?~~

~~Officer Coon: No, I did not.~~

~~Q: How tell~~ describe to me how you look[ed] at the seat belt.

**Officer Coon**: I mean, it was on its side—

Immediately after this testimony, in front of the jury, the Kings' attorney introduced the "if they are not wearing one" portion of the statement into the record:

**Kings' Counsel**: Your Honor, after the answer, ["]I always look at the seatbelts, *if they are not wearing one*.["] And then there is—under the rule of optional completeness—a question and answer that was not read and I would like to publish that to the jury at this time.

(Emphasis added.)

Toyota's attorney was quick to alert the trial court that *the plaintiffs' counsel* had just introduced Officer Coon's suggestion that King was not wearing a seat belt.

**Toyota's Counsel:** If I understand it, Your Honor, he just said the question was, ["]Did you look at it?["] And the answer, ["]I always look at the seat belts.["] [To the Kings' attorney] And you said what?

**Kings' Counsel**: And he finishes the answer.

**Toyota's Counsel**: *You* finish the answer.

**Kings' Counsel**: Under the rule of optional completeness, question at line 23, ["]Did you pull the seat belt out? Answer: No, I did not.["] That's what I wanted read into the record.

5

**Toyota's Counsel**: Your Honor, I want the full answer to line 21 [just before the previous question and answer] read into the evidence *because he just stated it out loud*.

. . .

(Bench conference.)

. . .

**Toyota's Counsel**: Right. [To the Kings' attorney] You read, ["]*If they are not wearing one*.["] We all heard it. That's the biggest door opening I have ever seen.

**Kings' Counsel**: Judge, under the rule of optional completeness I wanted [the next question and answer] read and he can't go back—

**The Court**: I understand that. *You read it. You just read it. You read it into the record and before the jury*.

(End of bench conference.)

. . .

**The Court**: . . . [To Toyota's attorney] *I think [the Kings' attorney] has read into the record what you wanted published*.

**Toyota's Counsel**: That's correct. And read into the record the complete answer to the prior question.

**The Court**: *It was already read into the record*.

**Toyota's Counsel**: Thank you.

**The Court**: You're welcome.

(Emphases added.)

The Kings' attorney did not move to strike the testimony or seek a mistrial, nor did he request a curative or limiting instruction after quoting the statement. He did not revisit the seat belt issue during his subsequent tender of designated testimony from Officer Coon's deposition.

During Toyota's direct examination of expert witness Lee S. Carr, the statement was again read into the record. Carr, an accident reconstructionist, built a scale model of the accident scene. Before trial, he surveyed the accident site, read available police reports, and reviewed Officer Coon's deposition. The relevant portion of Carr's testimony states:

**Toyota's Counsel**: All right. And then yesterday, sir, Trooper Coon was presented by deposition. You have read his deposition, have you not, sir?

**Carr**: Yes.

**Toyota's Counsel**: I want to review this deposition passage *which was read into the record*, sir, yesterday. This is page 26 beginning on line 17—or 15, rather.

**Question:** So the seat belt was stowed?

**Answer:** Yes.

**Question:** Did you inspect the webbing to see if there were any marks on it?

**Answer:** There was not any.

**Question:** And did you look at it?

**Answer:** I always look at the seat belt *if they are not wearing one.*

**Question:** Did you pull the seat belt out?

**Answer:** No, I did not.

7

**The Court:** Hold on . . . [Kings' attorney] has an objection . . .

**Kings' Counsel:** Your Honor, we need the jury out.

(Jury is not present.)

**Kings' Counsel:** Your Honor, let me sort of give you some history here. Yesterday counsel showed what he just showed to the witness, showed it to Your Honor, and said, I'm not going to play this. This is within your ruling where the officer said, ["]If he is not wearing it.["] . . . That that's not testimony consistent with Your Honor's ruling that should be played with the jury.

*Yesterday I made a mistake when I stood up on the rule of optional completeness and I was trying to identify where I wanted to insert the testimony. And I inadvertently referenced that subject.* Fortunately, Your Honor . . . what a lawyer says is not testimony, right? . . .

I take it under some sort of guise that I opened the door . . . but that's something . . . that [Toyota's attorney] should have sought a clarification for. I think frankly that is sanctionable conduct . . . If he felt that there had been a waiver . . . he should have approached.

**The Court:** [Toyota's counsel]?

**Toyota's Counsel:** Your Honor, I did bring to everyone's attention that [Kings' attorney] had failed to even object to this passage prior to it being played. Your Honor will recall and the record reflect we had a bench conference shortly before this passage was being offered to the jury. [Kings' attorney] told me and told the Court that he was going to offer something for purposes of optional completeness. I said, on the record, ["]Well, if you do, be careful of the motion in limine.["] He said, ["]I've got it.["] He went back to counsel table . . . we completed our video offer, he stood up and he said, ["]*For purposes of optional completeness*["]—*this wasn't lawyer talk, this was evidence and he read,* ["]*If they are not wearing one.*["] . . .

8

We then had another bench conference . . . At first [Kings' attorney] tried to deny that he said that. *Your Honor had reminded him,* ["]*No, you just said that. It's in the record, it's before the jury.*["] [Kings' attorney] said, ["]If it's in the record, it's in the record, what's before the jury is before the jury.["] . . . I don't need to seek a clarification of what's in evidence or what's in before the jury when we had multiple bench conferences about it. Mistake or not—which I know does happen on occasions despite it having been pointed out several times—as [Kings' attorney] said yesterday, ["]It's before the jury, it's in the record and I'm free to use what is in the evidence in framing my questions.["]

So there is nothing sanctionable about that. I know the plaintiffs are disappointed that they did that, but there is nothing sanctionable[.]

. . .

**The Court:** . . . [T]he record is going to have to speak for itself. My recollection . . . is that it was a question that you were reading from the deposition for optional completeness. I understand and recognize that that may have been inadvertent . . .

. . . I'm not going to sanction anybody, but . . . [Toyota's counsel], [do] not . . . publish that to the jury. It has been mentioned. You had already agreed that that would not go before the jury. The evidence is going to be reflected in the record . . .

**Toyota's Counsel:** . . . I understand the Court's ruling . . . except for the . . . statement that I agreed that that would not be before the jury. I'm not the one that put it before the jury, your Honor, and *I don't think I agreed that it would be after he put it before the jury. I agreed before they put it before the jury that I wouldn't do it. But after he put it in the record and even conceded to the Court, and I'm sure it will appear in the record, [what's] before the jury, is before the jury* . . . I will simply ask Mr. Carr the follow-up question that I was going to ask him, but I will not publish that again.

**The Court:** Thank you. I appreciate it.

9

(Emphases added.) The jury returned, and Toyota's counsel resumed questioning Carr, without publishing Coon's statement again. Later, the statement resurfaced during Toyota's direct examination of William Van Arsdell, Ph.D., another of Toyota's expert witnesses. Dr. Van Arsdell testified that he had been retained to evaluate the seat belt's design and performance, and to investigate whether King's seat belt functioned properly and whether he was wearing it when the accident occurred. Dr. Van Arsdell reviewed the depositions of all witnesses, including Officer Coon. The relevant portion of Dr. Van Arsdell's direct examination by Toyota's attorney states:

**Toyota's Counsel**: . . . During the course of your work in the case, you obviously, thoroughly inspected the driver's and passengers' seat belt of the Toyota 4 Runner.

**Dr. Van Arsdell**: Yes.

**Toyota's Counsel**: You also read depositions?

**Dr. Van Arsdell**: Yes.

**Toyota's Counsel**: Did you read the deposition of Officer Coon?

**Dr. Van Arsdell**: Yes, I did.

**Toyota's Counsel**: And based on your reading of his deposition, did he examine the driver's seat belt of the Toyota 4 Runner?

**Dr. Van Arsdell**: Yes, he said he always would examine the seat belts, *if someone was not wearing their seat belt*.

(Emphasis added.) The Kings' attorney did not object to Dr. Van Arsdell's statement.

After the close of evidence, but before arguments commenced, the Kings' attorney asked the trial court for guidance on the point with respect to Officer Coon's testimony:

10

| | |
|---|---|
| **Kings' Counsel**: | [R]emember there was that issue where I was trying to identify a point for optional completeness and *I misread or should not have read that.* I want to make sure that counsel is not going to use that during their [closing] argument because you ruled on that point four or five times. |
| **The Court**: | Just make your objections and we will preserve the record and appropriate sanctions will be issued to either party *if they argue outside the record*. |
| **Toyota's Counsel**: | And just on that point, Your Honor, we do intend to . . . share that with the jury. It's before the jury, *it was read into the record*, didn't allow us to publish, but as [the Kings' own attorney] himself stated, What is before the jury, is before the jury . . . |
| . . . | |
| **The Court**: | [To the Kings' attorney] And you make your objection, and I will sanction people accordingly. My recollections of it was that . . . [Officer Coon's conclusions] are outside the record. |
| **Toyota's Counsel**: | His statement that [King] was unbelted is outside the record. What *is* in the record and was read in by [the Kings'] counsel, Your Honor, is the testimony that, ["]I checked the seat belt. And did you look at it? Answer: I always look at the seat belts *if they are not wearing one*.["] That is what was read into the record. |
| **The Court**: | *I don't believe that was read into the record at all.* |
| **Toyota's Counsel**: | Well, we do, Your Honor, and we know it was, so we will just argue accordingly. |
| **The Court**: | [To the Kings' attorney] Make your objections and ask for your sanctions. |
| **Kings' Counsel**: | I will make the objection if that is done. |

(Emphases added.)

11

During Toyota's closing argument, Toyota's counsel quoted the previously admitted line of questioning from Officer Coon's deposition:

**Toyota's Counsel**: Dr. Wright and Mr. Flynn also agreed with Mr. Coon's testimony about the condition of the seat belt.

**Question:** So is the seat belt stowed? [Aside] This was read into the record.

**Answer:** Yes.

**Question:** Did you inspect the webbing to see if there were any marks on it?

**Ans[w]er:** There was not any.

**Question:** And you did look at it?

**Answer:** I always look at the seat belts *if they are not wearing one*.

(Emphasis added.)

The Kings' attorney objected, arguing that Toyota violated the trial court's limine order. The trial judge sustained the objection. But despite the objection, the Kings' attorney did not move to strike and did not request a curative or limiting instruction. Toyota's attorney responded, "You heard that, and it was read into the record by [the Kings' own attorney] when Mr. Coon's deposition testimony was offered," and continued with closing argument.

The jury returned a verdict in Toyota's favor, and the trial court signed a corresponding judgment. A few weeks later, the Kings moved for new trial, alleging that Toyota's counsel had

violated the trial court's limine rulings by reading, during closing argument, the disputed portion of

Officer Coon's deposition.[4]

Toyota responded that the Kings' lawyer violated the limine rulings by offering the evidence

first. Toyota elaborated:

> The Court acknowledged on the record that [*the Kings' own attorney*] *had read Officer Coon's statement into the record.* Because [he] read this testimony into evidence, [*Toyota*] *had every right to make closing arguments regarding evidence already in the record.* Plaintiffs cannot introduce evidence, and then allege the prejudice from this evidence justifies a new trial.

(Emphasis added.)

Nevertheless, the trial court granted the Kings' motion on two grounds. First, the trial court

stated that Toyota had violated the limine order and "purported to present evidence outside the

record." The court explained that its decision was based on Toyota's reference during closing to

Coon's testimony:

> Specifically, during closing argument, [Toyota] read from the [d]eposition of witness Justin Coon concerning his lay opinion, and conclusion that Mr. King was not wearing a seat belt at the time of the commencement of the rollover. The Court had previously excluded these lay opinions and conclusory remarks by witness Coon on the grounds that they were not based on his personal knowledge and were, therefore, conclusory and incompetent to be presented to the jury and because witness Coon did

---

[4] Before the trial court ruled on the new trial motion, but more than thirty days after the judgment was signed, the Kings filed an amended motion for new trial alleging "newly discovered evidence" about a former Toyota employee's unrelated allegations against Toyota for "calculated conspiracy." Toyota contended that the amended motion was untimely. *See* TEX. R. CIV. P. 329b(b) ("One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial . . . is overruled and within thirty days after the judgment . . . is signed."); *see also Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003) (holding that "an amended motion for new trial filed more than thirty days after the trial court signs a final judgment is untimely" and does not preserve issues for appellate review but that "the trial court may, at its discretion, consider the grounds raised in an untimely motion and grant a new trial under its inherent authority before the court loses plenary power").

Regardless, although the trial court considered the Amended Motion for New Trial, its order relied solely on arguments already in the original motion. Accordingly, we need not address the timeliness of the amended motion.

13

not have the requisite training, education, schooling, or experience to opine whether or not Mr. King had been belted at the start of the rollover.

The court thus granted a new trial "in the interest of justice."

Second, the trial court reasoned that a new trial was warranted to sanction Toyota for violating the limine order, because a limiting instruction could not eliminate the harm. *See* TEX. R. CIV. P. 320 ("New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct.").

### 2. Court of Appeals

Toyota sought a writ of mandamus from the court of appeals, which denied relief. 327 S.W.3d 302. The court evaluated the trial court's order in light of *In re Columbia*. The court of appeals recognized that after *Columbia*, a new trial order must include the basis for the trial court's decision. *Id.* at 305. But after considering the trial court's order—reproduced in its entirety in the court of appeals' opinion—the court concluded that "there is no question that the trial court . . . *specified the reasons* for its decision to grant the Kings' motion [for new trial], and thereby satisfied the specificity requirements of *Columbia*." *Id.* (emphasis added). The court of appeals rejected the notion that "*Columbia* supports further review of the *merits* of the grounds specified," and was "unpersuaded that the language Toyota relie[d] upon [in requesting mandamus relief] supports such an expansion of *Columbia*." *Id.* at 305-06 (emphasis added).

14

### 3. This Court

Toyota then filed an original proceeding in this Court.[5] We set the matter for argument, 55 Tex. Sup. Ct. J. 1212 (Tex. Aug. 31, 2012), and now conditionally grant relief.

## II. Discussion

### A. An appellate court may conduct merits-based mandamus review of a trial court's articulated reasons for granting new trial.

In the decades leading up to *Columbia*, our jurisprudence gave trial courts broad deference in granting new trials and, specifically, "approved the practice of trial courts failing to specify reasons for setting aside jury verdicts." *Columbia*, 290 S.W.3d at 208. We generally precluded review of new trial orders, except in two narrow instances. *Id.*; *see also Johnson v. Court of Civil Appeals*, 350 S.W.2d 330, 331 (Tex. 1961) (recognizing that "[t]here are only two instances where any appellate court of this state has ever directed the trial judge to set aside its order granting motion for new trial": when the order was void or when the trial court erroneously concluded that the jury's answers to special issues conflicted irreconcilably).

But in *Columbia*, we emphasized that the discretion given trial courts was "not limitless." *Columbia*, 290 S.W.3d at 210. In that case, the jury returned a verdict in favor of the hospital-defendants after a four-week trial. *Id.* at 206. The trial judge granted the plaintiffs' new trial motion "in the interests of justice and fairness," without further elaboration. *Id.* We held that this was inadequate, noting that "such a vague explanation [whe]n setting aside a jury verdict does not enhance respect for the judiciary or the rule of law, detracts from transparency we strive to achieve

---

[5] The Texas Civil Justice League and the Texas Association of Defense Counsel submitted briefs as amici curiae in support of the petition for writ of mandamus.

15

in our legal system, and does not sufficiently respect the reasonable expectations of parties and the public when a lawsuit is tried to a jury." *Id.* at 213.

We disapproved of our prior approach under *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex. 1985), and held that "just as appellate courts that set aside jury verdicts are required to detail reasons for doing so, trial courts must give more explanation than 'in the interest of justice' for setting aside a jury verdict." *Columbia*, 290 S.W.3d at 205. We held that "the parties and public are entitled to an *understandable, reasonably specific explanation* [of] why their expectations are frustrated by a jury verdict being disregarded or set aside, the trial process being nullified, and the case having to be retried." *Id*. at 213 (emphasis added). We did not detail exactly what such an explanation would require, although it would have to be more than a bare assertion of "in the interests of justice and fairness." *Id.*

More recently, we decided *In re United Scaffolding, Inc.*, 377 S.W.3d 685 (Tex. 2012), which presented a related, but narrower, question. There, we were asked to decide whether a trial court that gave four reasons for granting a new trial, including "in the interest of justice and fairness," and linked them by "and/or" satisfied *Columbia*. *Id.* at 689.

In concluding that it did not, we noted that *Columbia*'s purpose "w[ould] be satisfied so long as the order provides a *cogent* and *reasonably specific* explanation of the reasoning that led the court to conclude that a new trial was warranted." *Id.* at 688 (emphases added). We acknowledged that *Columbia* focused "not on the length or detail of the reasons a trial court gives, but on how well those reasons serve the general purpose of assuring the parties that the jury's decision was set aside only after careful thought and *for valid reasons*." *Id.* at 688 (citing *Columbia*, 290 S.W.3d at 213)).

16

We held that the trial court's "use of 'and/or' le[ft] open the possibility that 'in the interest of justice and fairness' [could be] the sole rationale." *Id.* at 689. That possibility, if true, would have violated our *Columbia* standard.

We held that "a trial court does not abuse its discretion[6] so long as its stated reason for granting a new trial (1) is a reason for which a new trial is *legally appropriate* (such as a well-defined legal standard or a defect that probably resulted in an improper verdict); and (2) is *specific enough* to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand." *Id.* at 688–89 (emphases added). Applying this new standard to the new trial order, we concluded that because, under *Columbia,* "in the interests of justice or fairness" or similar language "is never an independently sufficient reason for granting new trial," the "and/or" order failed the test's first prong. *Id.* at 689–90.

This case represents the next step in that progression. We must decide whether, on mandamus review, an appellate court may evaluate the merits of a new trial order that states a clear, legally appropriate, and reasonably specific reason for granting a new trial. Stated differently, if a trial court's order facially comports with *Columbia* and *United Scaffolding*, may an appellate court review the correctness of the stated reasons for granting a new trial? Absent further guidance from

---

[6] We also provided a non-exhaustive list of examples of new trial orders that would be clear abuses of discretion, including: giving a reason (specific or not) that was not a legally valid reason; plain statements that the trial court merely substituted its own judgment for the jury's; statements that the trial court simply disliked one party's lawyer; invidious discrimination; an explanation that provides little or no insight into the trial judge's reasoning; and pro forma template language absent a trial judge's analysis. *United Scaffolding*, 377 S.W.3d at 689.

this Court, our courts of appeals have generally been reluctant to engage in merits-based review of new trial orders.[7]

* * *

To answer this question, we consider *Columbia* and *United Scaffolding* together. A new trial order must be "understandable," "reasonably specific," *see Columbia*, 290 S.W.3d at 213, "cogent," "legally appropriate," "specific enough to indicate that the trial court did not simply parrot a pro forma template," and issued "only after careful thought and *for valid reasons*," *see United Scaffolding*, 377 S.W.3d at 688 (emphasis added). An order that does not satisfy these requirements may be corrected by mandamus.

---

[7] *See, e.g.*, *In re Health Care Unlimited, Inc.*, No. 04–12–00192–CV, 2012 WL 1142302 (Tex. App.—San Antonio Apr. 4, 2012, orig. proceeding [mand. pending]) (mem. op.) (denying mandamus with no additional explanation other than simply being "of the opinion that relator is not entitled to the relief sought"); *In re Oliver*, No. 09–11–00546–CV, 2011 WL 5594606 (Tex. App.—Beaumont Nov. 17, 2011, orig. proceeding [mand. pending]) (mem. op.) (denying mandamus relief after concluding that relator had "not shown that the trial court's reasons provide no valid basis in th[e] case, or that the trial court clearly abused its discretion"); *In re State Farm Mut. Auto. Ins. Co.*, No. 04–11–00708–CV, 2011 WL 4830177 (Tex. App.—San Antonio Oct. 12, 2011, orig. proceeding [mand. pending]) (mem. op.) (denying mandamus relief and concluding mandamus review is not available when relators are simply asking appellate court to "review the trial court's reasons for not granting a new trial"); *In re Camp Mystic, Inc.*, No. 04–11–00694–CV, 2011 WL 4591194 (Tex. App.—San Antonio Oct. 5, 2011, orig. proceeding) (mem. op.) (denying mandamus relief and reading *Columbia* to "provide mandamus relief when the trial court fails to specify the reasons for granting a new trial, not to provide a merit-based review on mandamus"); *In re Jazzercize, Inc.*, No. 05–11–01034–CV, 2011 WL 3805545 (Tex. App.—Dallas Aug. 30, 2011, orig. proceeding [mand. pending]) (mem. op.) (denying mandamus relief despite relators' challenge that trial court order granting new trial was "on erroneous and pretextual reasons"); *In re Whataburger Rests., LP*, 2010 WL 4983563 (Tex. App.—El Paso 2010, orig. proceeding [mand. pending]) (denying mandamus relief and interpreting *In re Columbia* to mean mandamus review is available only "if the trial court fails to specify the reasons for ordering the new trial," since the "merits of the grounds stated . . . are not reviewable by mandamus").

*But see In re Lufkin Indus., Inc.*, 317 S.W.3d 516, 518 (Tex. App.—Texarkana 2010, orig. proceeding [mand. denied]) (denying mandamus relief because it found trial court was within its discretion on at least one ground, *but* holding that a trial court's reasons for granting new trial *are* reviewable on appeal).

Notably, after *In re Lufkin*, the Texarkana court of appeals clarified its position in *In re Smith*, 332 S.W.3d 704, 708–09 (Tex. App.—Texarkana 2011, orig. proceeding) (denying mandamus relief and clarifying its earlier decision in *In re Lufkin* that "[n]ever . . . did we state the proposition . . . that the appellate court should review the entire record, as in an ordinary appeal, in our mandamus review").

18

Having already decided that new trial orders must meet these requirements and that non-compliant orders will be subject to mandamus review, it would make little sense to conclude now that the correctness or validity of the orders' articulated reasons cannot also be evaluated. To deny merits-based review would mean that a trial court could set aside a verdict for reasons that are unsupported by the law or the evidence, as long as those reasons are facially valid. *Columbia's* requirements would be mere formalities, lacking any substantive "checks" by appellate courts to ensure that the discretion to grant new trials has been exercised appropriately. Transparency without accountability is meaningless. While we reiterate our "faith in the integrity of our trial bench as well as that of the appellate bench," *Columbia*, 290 S.W.3d at 214, we decline to hold that their decisions are immune from substantive review.

We have recognized two narrow instances in which new trial orders are reviewable, on the merits, by mandamus: when the trial court's order was void or when the trial court erroneously concluded that the jury's answers to special issues were irreconcilably in conflict. *See Columbia*, 290 S.W.3d at 208 (citing *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005)).[8] As to the latter, since at least 1926, we have granted mandamus relief to correct a trial court's erroneous ruling. *See Gulf, C. & S.F. Ry. Co. v. Canty*, 285 S.W. 296, 302 (Tex. 1926). In such cases, merits-based mandamus review is relatively straightforward—an appellate court may compare the jury charge against the jury's answers, and decide whether the trial court correctly concluded that they conflicted irreconcilably.

---

[8] *See also Angelina Cas. Co. v. Fisher*, 319 S.W.2d 387, 388 (Tex. 1962) (noting that if a trial court is "mistaken" about whether jury answers were in irreconcilable conflict, mandamus would issue to compel entry of judgment).

This case is analogous. Appellate courts must be able to conduct merits-based review of new trial orders. If, despite conformity with the procedural requirements of our precedent, a trial court's articulated reasons are not supported by the underlying record, the new trial order cannot stand.

While this review is new to us, it is old hat to our colleagues on the federal bench. Federal appellate courts regularly conduct record-bound, merits-based review of new trial orders to evaluate their validity.[9] For instance, in *Peterson v. Wilson*, 141 F.3d 573, 580 (5th Cir. 1998), the United States Court of Appeals for the Fifth Circuit reversed a district court's ruling granting a new trial, vacated the judgment rendered after a jury verdict in a second trial, and reinstated the first trial's results. The Fifth Circuit observed that the trial court had granted the defendant's "bare-bones" new trial motion despite an original verdict for the plaintiff, after the court "met with and interrogated the jurors after the verdict (concededly, outside the presence of the parties and counsel), and then acted on the comments of some of the jurors as though their remarks were newly discovered evidence." *Id.* at 575. After examining the district court's stated reason and "conduct[ing] the obligatory 'cumbersome review' of the multi-volume trial record," the court concluded from its "meticulous review of the record of the first trial" that "[t]he instant record [could not] support any such conclusion [that the evidence was insufficient to support the original jury verdict]." *Id.* at 575–79 (internal citations omitted).[10]

---

[9] *See, e.g.*, *Van Steenburgh v. Rival Co.*, 171 F.3d 1155, 1160 (8th Cir. 1999) (noting that "[a] district court must adequately articulate its reasons for overturning a jury verdict . . . so that the reviewing court can exercise a meaningful degree of scrutiny and safeguard parties' right to a jury trial").

[10] Toyota actually argues that *Peterson* and the federal model "run[] headlong into established Texas law that [generally] precludes appellate review of a new-trial order [or a final judgment] after a subsequent retrial," *see Cummins v. Paisan Constr. Co.*, 682 S.W.2d 235, 236 (Tex. 1984), but concedes that "[e]ven under the federal model, there are cases in which the court of appeals granted mandamus to review a new-trial order before a subsequent retrial could

Similarly, in *Cruthirds v. RCI, Inc., d/b/a Red Carpet Inn of Beaumont, Texas*, 624 F.2d 632, 635, 636 (5th Cir. 1980), the Fifth Circuit "review[ed] the record carefully to make certain that the district court [did] not merely substitute[] its own judgment for that of the jury" when that court "disregard[ed] the verdict and grant[ed] a new trial." The court consulted the record to evaluate the district court's two stated grounds for granting new trial—the first, an erroneous jury charge on comparative negligence, and the second, an "against the great weight and preponderance" and "prevent[ion of] a miscarriage of justice" type rationale. *Id.*[11] Relevant for our purposes is the fact that the Fifth Circuit has long engaged in merits-based review of new trial orders, looking to the records available on a case-by-case basis. Though not binding on this Court, this approach supports our decision today that the reasons articulated in a new trial order are subject to merits-based mandamus review.

**B.      Under this standard, the trial court abused its discretion in granting a new trial.**

**1.      Merits-Based Review of This Order**

Having concluded that the reasons articulated in a new trial order are reviewable on the merits by mandamus, we now evaluate the trial court's grant of new trial against the underlying record.

---

occur." We reference these federal cases only to demonstrate that we are not the first nor the only court to conclude that, in certain instances, review of the record to evaluate a new trial order may be warranted.

[11] The court noted that "the record in this case does not clearly reveal what error in the instructions to the jury was so troubling to the district court," but ultimately concluded that the district court had committed a fundamental error in the jury instructions which, though unobjected to by plaintiff's counsel, was severe enough to warrant *sua sponte* correction by new trial. *Cruthirds v. RCI, Inc., d/b/a Red Carpet Inn of Beaumont, Texas*, 624 F.2d 632, 635–36 (5th Cir. 1980).

The new trial order complies with *Columbia*'s procedural "form" requirements. The trial judge's three-page order, which pinpointed Toyota's reference to Officer Coon's testimony in closing argument as the basis for granting new trial, is distinguishable from the *Columbia* order's bare assertion of "in the interests of justice and fairness." This order, on its face, comports with *Columbia*.

Similarly, the trial court's explanation of and reference to the specific grounds for new trial from Toyota's closing argument satisfy, facially, *United Scaffolding*'s requirements that the reasons listed (if accurate) would have been "legally appropriate" grounds for new trial, and are "specific enough" that they are not simply pro forma. 377 S.W.3d at 688–89.

The trouble is that the record squarely conflicts with the trial judge's expressed reasons for granting new trial. Simply articulating understandable, reasonably specific, and legally appropriate reasons is not enough; the reasons must be valid and correct. Having undertaken our own "'cumbersome review' of the multi-volume trial record," *Peterson*, 141 F.3d at 579 (internal citations omitted), we conclude that the record does not support the new trial order.

The trial court initially granted the Kings' motion in limine to preclude Officer Coon's deposition testimony regarding King's seat belt usage at the time of the crash. But a protective limine order alone does not preserve error. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex. 1986) (noting that "to preserve error as to an improper question asked in contravention of a sustained motion in limine, a timely objection is necessary"). Furthermore, where, as here, the party that requested the limine order *itself* introduces the evidence into the record, and then fails to immediately object, ask for a curative or limiting instruction or, alternatively, move for mistrial, the party waives

22

any subsequent alleged error on the point. *See, e.g.*, *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) ("Error is waived if the complaining party allows the evidence to be introduced without objection."); *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 659 n.6 (Tex. 1989) ("Failure to request the court to instruct the jury to disregard the inadmissible testimony results in waiver of the alleged error where the instruction would have cured the error."); *see also* TEX. R. APP. P. 33.1(a) (detailing requirements for preservation of appellate complaints); TEX. R. EVID. 103(a) (describing effects of erroneous admission or exclusion of evidentiary rulings); JOHN HENRY WIGMORE, WIGMORE'S CODE OF THE RULES OF EVIDENCE IN TRIALS AT LAW § 140 (3d ed. 1942) ("The objector waives an objection when he himself *subsequently introduces* evidence which is directed to prove or disprove the same matter and is liable to the same objection.").

Even if the attorney's actions were inadvertent, the Kings introduced the point into evidence and waived the point of error. The trial court acknowledged the introduction of the evidence, stating three times that the Kings' attorney had "read it into the record." The Kings argue that because the statement came from their *attorney*, and not directly from Officer Coon's deposition, it cannot be considered a tender or proffer of testimony. The record reflects, however, that the Kings' attorney quoted the relevant deposition testimony when making an offer under the rule of optional completeness and that the trial court repeatedly acknowledged that the evidence had been read into the record. *See* TEX. R. EVID. 107 ("When part of a[] . . . recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other . . . recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence.") Surely, the Kings would not argue that their *intended* quotation for optional

completeness was a tender of testimony, while their *inadvertent* quotation was not. Once the evidence was in the record—without objection or a request that it be stricken or that the jury be instructed to disregard—it was in for all purposes and a proper subject of closing argument.

Toyota's counsel fairly referenced the previous day's proceedings during Lee Carr's direct examination, by noting that he "wanted to review [Officer Coon's] deposition passage which was read into the record . . . yesterday." Though the Kings' attorney objected to Toyota's questioning, he again neglected to ask the trial court for any sort of ruling, or for a limiting or curative instruction. The colloquy ended with the trial court's noting her recollection that Kings' counsel had previously "read[] from the deposition for optional completeness" and that his disclosure may have been "inadvertent." She stated that she was not going to sanction anyone, that "[t]he record is going to have to speak for itself," and that "[t]he evidence is going to be reflected in the record." *See* discussion *supra*, ___ S.W.3d at ___.

On the third instance, during Dr. Van Arsdell's direct examination, the Kings' attorney again remained silent. The Kings' attorney's objection during closing argument was too late. The statement was in evidence. Attorneys in closing must "confine the argument strictly to the evidence"; any evidence in the record is fair game. *See* TEX. R. CIV. P. 269(e) ("Counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel.").

The trial court's pretrial limine rulings prevented Toyota from introducing the evidence, and the record—specifically, the redacted deposition Toyota offered—reflects Toyota's compliance with those rulings. After the Kings' attorney read the testimony into evidence, and after Toyota's counsel repeated the excerpt subsequently, the parties sought clarification from the trial court, who repeatedly

24

stated that the record would reflect what was in evidence. The trial court did not instruct Toyota not to mention Coon's statement during closing; rather, she warned that "appropriate sanctions [would] be issued to either party *if they argue outside the record*." (Emphasis added.) We agree with Toyota that it did not violate the trial court's rulings by referencing Officer Coon's deposition in closing.

We acknowledge that appellate courts benefit from the hindsight that a complete record provides. Trial courts, on the other hand, must make difficult, often dispositive, decisions based on their recollection and best judgment alone, frequently without the aid of full records, transcripts, or briefing. Nevertheless, having thoroughly reviewed the record here, we conclude that the trial court's articulated reason for granting new trial—that Toyota's counsel "willfully disregarded, brazenly and intentionally violated" the limine orders in closing—is unsupported. The record directly contravenes the order, including the trial court's acknowledgment during trial that the Kings' attorney "ha[d] read into the record what [Toyota] wanted published."

Because the record does not support the articulated reason, the trial court abused its discretion by granting a new trial on that ground.

### 2. New Trial as a Sanction

The trial court further explained that it was ordering a new trial pursuant to its inherent authority to issue sanctions, irrespective of or in addition to Texas Rule of Civil Procedure 320, because of Toyota's reference to Officer Coon's testimony during closing argument. The court held that the reference was so prejudicial and inflammatory that an instruction to disregard could not eliminate the harm.

A new trial on that basis presupposes sanctionable conduct, and we have just held that Toyota's statements during closing argument were appropriate. The record reflects that Toyota and its counsel complied with the limine orders regarding Officer Coon's deposition, as demonstrated by the playback of mechanically redacted portions of the videotaped testimony. There is nothing to suggest that either Toyota or its counsel intended, prior to the statement's first introduction by the Kings' attorney, to introduce the statement regarding King's seat belt usage to the jury. In fact, Toyota made clear prior to Officer Coon's deposition playback that it had voluntarily deleted the "if they are not wearing one" excerpt, even though there had been no objection or ruling on that portion specifically. Once the statement was in evidence, however, and in light of subsequent bench conferences, Toyota's reference to it during closing argument was appropriate. Given that, the trial court abused its discretion in sanctioning Toyota for that conduct.

## III.    Conclusion

On mandamus review, an appellate court may conduct a merits-based review of the reasons given for granting a new trial. That review compels us to conclude that the trial court abused its discretion in granting a new trial here. The stated reasons, though complying in form with the requirements of *Columbia* and *United Scaffolding*, lacked substantive merit. Further, a new trial was an improper sanction.

26

We conditionally grant relief and order the trial court to withdraw its order and render judgment on the verdict. We are confident the trial court will comply, and the writ will issue only if it does not.

_____
Wallace B. Jefferson
Chief Justice

**OPINION DELIVERED**: August 30, 2013