# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00313-CV

### In re David Scott Gallup, Lance Andrews, and LASN Ranch LLC

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

In this original proceeding, relators David Scott Gallup, Lance Andrews, and LASN Ranch LLC seek mandamus relief from the trial court's order granting the motion for new trial filed by real party in interest Carol Owens. For the reasons explained below, we will conditionally grant the relief.

## BACKGROUND

This proceeding arises out of a personal-injury lawsuit brought by Owens. Gallup, a commercial truck driver for Andrews (d/b/a LANCO Transportation) was driving an 18-wheeler southbound on Interstate 35 when he rear-ended Owens's vehicle on January 25, 2015. Owens filed the underlying suit against Gallup, LASN Ranch,[1] and Andrews for personal injuries she allegedly suffered as a result of the collision.

The case was tried to a jury, which returned a verdict in relators' favor, finding that the collision was not proximately caused by Gallup's negligence but solely by Owens's own

_____

[1] The trial transcript indicates that the parties agreed to nonsuit LASN Ranch, LLC because it had no involvement in the collision, but there is no written order in the record nonsuiting that party and LASN Ranch is named as a relator in this proceeding.

negligence. The trial court rendered judgment consistent with the verdict but subsequently signed an order granting Owens's motion for new trial, explaining that

> the Court finds that the jury's determination that the Defendant . . . Gallup's negligence was not a proximate cause of the collision in question is against the great weight and preponderance of the evidence adduced at trial. Considering the specific facts and circumstances in this case, including the Defendant's receipt of a citation for following too closely and causing a wreck, the stipulation of the parties that the Defendant paid the ticket, the photographs depicting the damage to the Plaintiff's vehicle, and the testimony of the parties, the Court finds that the jury's determination regarding Defendant Gallup's negligence is against the great weight and preponderance of the evidence and hereby grants Plaintiff's Motion for a New Trial.

Relators filed a petition for writ of mandamus asking this Court to issue a writ directing the trial court to vacate its January 10, 2019 order on Owens's motion for new trial and render judgment on the jury's verdict that Owens take nothing.

## DISCUSSION

Generally, mandamus will issue only to correct a clear abuse of discretion when an adequate remedy by appeal does not exist. *In re North Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 130 (Tex. 2018) (orig. proceeding). As to the latter requirement, the Texas Supreme Court has explained that "only in two instances have new trial orders rendered during the time a trial court has plenary power been reviewable [on appeal] by an appellate court: when the trial court's order was void and when the trial court erroneously concluded that the jury's answers to special issues were irreconcilably in conflict." *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 209 (Tex. 2009) (orig. proceeding). As in *Columbia* the parties in this case do not contend that either of those circumstances exist. Thus, absent mandamus review, relators would have no adequate appellate remedy. *See id.* at 209-10.

2

Having determined that relators have no adequate remedy by appeal, we next consider whether the trial court clearly abused its discretion. Rule 320 of the Texas Rules of Civil Procedure gives the trial court broad discretion to grant a new trial "for good cause, on motion or on the court's own motion." Tex. R. Civ. P. 320. The Texas Supreme Court has held that although trial courts have significant discretion in granting new trials, "such discretion should not, and does not, permit a trial judge to substitute his or her own views for that of the jury without a valid basis." *Columbia*, 290 S.W.3d at 212.

A new-trial order may be an abuse of discretion "if the articulated reasons plainly state that the trial court merely substituted its own judgment for the jury's." *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012) (orig. proceeding). An appellate court may conduct a merits-based mandamus review of a trial court's articulated reasons for granting a new trial. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 755–59 (Tex. 2013) (orig. proceeding). If the articulated reasons are not supported by the law and the record, mandamus relief is appropriate. *Id.* at 761.

Having reviewed the multi-volume trial record, we conclude that it does not support the new-trial order because the jury's negligence determination was not against the great weight and preponderance of the evidence. *See id.* at 759 (concluding that "the record squarely conflict[ed] with the trial judge's expressed reasons for granting [a] new trial"); *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (outlining factual-sufficiency standard, which requires party attacking sufficiency of evidence supporting adverse finding on which it had burden of proof to demonstrate that jury's answer is against great weight and preponderance of evidence).

3

A court may set aside a jury finding only if it is so contrary to the overwhelming weight of the evidence as to be "clearly wrong and unjust," *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986), and the court may not substitute its judgment for that of the jury or pass on the credibility of the witnesses, *see Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). When presented with conflicting evidence the trier of fact (here, the jury) may believe one witness and disbelieve others and may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

The record contains only two witnesses' firsthand accounts of the events precipitating the collision: Gallup's and Owens's. Gallup's testimony occurred by deposition and interrogatories and was read to the jury by his attorneys. When asked about whether the police officer's crash report was accurate in stating that Gallup's vehicle hit Owens's rear bumper after her vehicle had stopped, Gallup testified,

> Well, after she [Owens] cut me off and squeezed in, yes. I mean, I bumped her. I rubbed her.

Gallup continued:

> [Traffic was s]top and go. I mean, it was bumper to bumper.
>
> I was in I-35 morning traffic and was coming up on an exit. And there was enough space for a small car, and the plaintiff slid into the space and I barely bumped her. She didn't even look. And she was on the phone the whole time, EMS had to wait on her to get off the phone so they could ger her out of the car to put her on the stretcher.
>
> I told the police officer that I did what the law requires. As I came up to the [Grand Avenue] exit, as I was passing the exit, when she shot in for not even half a second, I glanced in my mirrors. And that's what you're supposed to do. The law says you're supposed to do. I checked my mirrors to—maybe half a second, and my eyes were back on the road and then she was there. She just forced herself in there.

4

. . .

She had slammed on her brakes. I mean, she crammed her car in there and just locked the brakes up that quick.

. . .

I believe when she come in there, she slammed on her brakes. I mean, whenever she come in and I hit the brakes and she—I bumped her.

. . .

She slammed on her brakes. And, honestly, I don't know how she got in there in the first place.

. . .

She was—whenever I looked out the front window and when I—she was on the phone. When she come off the exit and slammed on her brakes, she was on the phone. She wasn't even paying attention. When the paramedics got there, they were just standing there with their arms crossed shaking like, wow, wasting their time. Wasting everybody's time. She had to call her boss is what she had stated. I believe her daughter, too.

Gallup further testified that he was in second gear, traveling between five and fourteen miles per hour, at the time of the collision.

Owens testified that on the morning of the collision, she was "running late" and made some phone calls "before [she] got in the car." Owens continued:

I got in the left lane to get on the highway. I got on the highway in the lane with my signal on to move over into traffic. I remember I checked my rear-view mirror and the mirror outside the car. And I always look back, too. And when it was clear, I merged into traffic.

. . .
[The traffic w]hen I was trying to get on there, it was stop and go fast but speedy-like. Speedy-like.

. . .

5

And so it was easy to get on [the highway] there [at Grand Avenue].

. . .

Once I got on at Grand Avenue and proceeded over into traffic and I was driving—traffic kind of speeded up a little bit so I was driving maybe about five minutes or so seven minutes or so. And then traffic started slowing down. Started slowing down. Started slowing down. So once it started slowing down, we were, for a minute, stop and go. Then traffic stopped.

. . .

I was almost at—coming up to the next exit [when the collision occurred].

. . .

[Traffic] w[as] stopped [when the collision happened]. The highway came to a stop.

. . .

I was sitting there and all of a sudden, bam. . . . And I had no idea what had hit me.

Owens was driving a 2000 Honda Civic. She denied being on the phone when the collision occurred and "dart[ing]" in front of the 18-wheeler.

Given these conflicting narratives, and the jury's province to make credibility determinations, the jury could find in favor of Gallup, in favor of Owens, or somewhere in between (i.e., that the negligence of both parties proximately caused the collision). *See, e.g.*, *Mattingly v. Swisher Int'l, Inc.*, No. 03-17-00510-CV, 2018 WL 454787, at \*4 (Tex. App.—Austin Jan. 11, 2018, pet. denied) (mem. op.) ("It was the jury's province to assess the credibility of each witness and resolve consistencies in their testimony in deciding whether the [plaintiffs] met their burden of demonstrating that [the defendant] failed to use the degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.").

6

The jury chose to credit Gallup's narrative rather than Owens's, and other evidence weighed in favor of that choice: (1) testimony by Stephanie Andrews, manager of LANCO and wife of relator Lance Andrews, that she investigated the collision photos taken by Gallup and concluded that, evidenced by the location of the 18-wheeler's "bolt indentations" on Owens's bumper, Owens's vehicle was not in the center of the lane and was "not fully established in the lane" at the time of the collision; (2) Owens's testimony that when the collision occurred, she was running late to see her first patient of the day and that she kept making phone calls to solicit her daughter's and granddaughter's help to "keep ringing [her patient's] phone for me to try to get her up because she had to be at school at a certain time"; (3) Owens's conflicting deposition testimony that when the collision occurred she was on her way to a different patient's house, which the jury could have viewed as impugning her credibility; (4) the testimony of Candise Spikes, Owens's daughter, denying that she spoke by phone with her mother before or during the collision but only "immediately after" it, while acknowledging that the phone records indicate otherwise; (5) Spikes's testimony that her mother called her immediately after the collision and that she heard Gallup say to Owens, "Why did you jump in front of my car?"; (6) cell phone records that not only corroborated Gallup's testimony that Owens had been on her cell phone just prior to the collision but, furthermore, indicated that Owens was on a phone call when the collision occurred, contradicting both Owens's and Spikes's testimonies;[2] and

_____

[2] The records show that Owens made and received calls continuously in the half hour before the collision: 6:48 a.m. (2 minutes, outgoing to Spikes), 6:49 a.m. (1 minute, outgoing to Spikes), 6:51 a.m. (2 minutes, outgoing to Spikes's daughter), 6:52 a.m. (7 minutes, incoming from Spikes), 6:58 a.m. (1 minute, outgoing to Owens's first patient of the day), 6:59 a.m. (1 minute, outgoing to same patient), 7:00 a.m. (10 minutes, outgoing to Spikes), 7:09 (13 minutes, outgoing to Spikes). The records also indicate that Owens sent texts at 7:03 a.m. and 7:04 a.m. The peace officer's crash report reported that the collision occurred at 7:11 a.m. Gallup testified that the collision occurred about 6:50 a.m.

(7) Stephanie Andrews's testimony that she performed a background check on Gallup's driving record before hiring him to drive for LANCO and that he had a "clean" record with no prior tickets or accidents.

While Owens cites the parties' agreed stipulation, published to the jury, that Gallup "was given a ticket for following too closely and that he paid the ticket," neither his receipt of the citation nor his payment thereof establishes negligence as a matter of law. *See* Tex. Code Crim. Proc. arts. 27.14(c) ("In a misdemeanor case for which the maximum possible punishment is by fine only, payment of a fine or an amount accepted by the court constitutes a finding of guilty in open court as though a plea of nolo contendere had been entered by the defendant . . . ."), .02(5) ("A plea of nolo contendere . . . [has] the legal effect . . . of a plea of guilty, except that such plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based."); Tex. Transp. Code § 545.062 ("Following distance"); *Arn v. Stuart*, No. 03-09-00284-CV, 2010 WL 4378395, at *3 n.4 (Tex. App.—Austin Nov. 5, 2010, no pet.) (mem. op.) (noting that breach of Transportation Code section 545.062, requiring drivers to maintain safe following distance, "does not create per se negligence, but instead creates the same duty of reasonable care as under the common law" (quoting *Pearson v. DeBoer, Inc.*, 99 S.W.3d 273, 276 (Tex. App.—Corpus Christi 2003, no pet.))); *see also Coleman v. Conway*, No. 13-04-256-CV, 2005 WL 1693644, at *4 (Tex. App.—Corpus Christi July 21, 2005, no pet.) (mem. op.) (holding that, unless plea of guilty to traffic offense is made in open court, evidence of guilty plea is not admissible in civil suit for damages arising out of negligence giving rise to charge).

Traffic tickets are given for "possible violations of penal ordinance or statutes," not for the purpose of establishing fault in civil litigation. *Crnic v. Vision Metals, Inc.*, No. 14-03-

01307-CV, 2005 WL 81629, at *2 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.). Determination of who acted negligently in a civil dispute is a question to be determined by the jury, not law enforcement. *Id.* Further, Texas courts have consistently held that the mere occurrence of a rear-end automobile collision is not by itself evidence of negligence on the part of the rear driver. *Arn*, 2010 WL 4378395, at *3; *Pearson*; 99 S.W.3d at 276; *Vandyke v. Austin Indep. Sch. Dist.*, 547 S.W.2d 354, 357 (Tex. App.—Austin 1977, no writ). Whether the plaintiff proves negligence by a preponderance of the evidence is within the jury's province to determine and depends on "all the facts and circumstances of the particular case," not merely on the fact that a rear-end collision occurred. *See Arn*, 2010 WL 4378395 at *3–4.

While the peace officer's crash report, admitted into evidence, noted that Gallup received a citation for "fail[ing] to maintain clear safe distance," the officer's narrative contained elements supporting each Gallup's and Owens's sides of the story:

> V1 and V2 are an 18-wheeler combination both traveling south bound on N IH 35 Hwy right lane. V3 was also traveling in the same lane in front of V1. When V3 stopped, V1 hit V3 in the rear bumper with the front bumper. There was very minor damage to V3, two bolt holes in the plastic bumper. V1 had no visible damage. V1 driver said that he looked away for a second, and that V3 was in front of him from nowhere. He said that she barely came off the Grand Avenue entrance ramp. V3 driver said that she was established in the lane. V3 driver was transported to North Austin Hospital.

Photographs of the post-collision vehicles were admitted into evidence and corroborate the peace officer's narrative that damage to Owens's vehicle was minimal and that there was no visibly detectable damage to the 18-wheeler. While the trial court's new-trial order refers to evidence of photographs "depicting the damage to" Owens's vehicle, we cannot say that such vehicle damage necessarily weighs in favor of a finding that either party was negligent or is relevant to that issue. It is undisputed that Owens's compact car was rear-ended by the 18-wheeler

9

and suffered some damage, but we cannot agree with the trial court that this and the sum of all the other evidence renders the jury's verdict as to negligence clearly wrong and manifestly unjust.

While Owens presented some evidence from which the jury could have inferred Gallup's negligence, the jury also heard ample conflicting evidence supporting its finding that Owens's negligence, rather than Gallup's, proximately caused the collision. The jury could have found that, despite the exercise of ordinary care, Gallup could not have avoided the collision due to Owens being distracted and inattentive because she was running late to an important job, talking on the phone while merging onto a busy highway, cutting Gallup off, immediately slamming on her brakes before fully establishing her car in the lane, and giving Gallup an inadequate opportunity to stop without hitting her. On this record, we cannot agree with the trial court that the jury's failure to find that Gallup's negligence caused the accident was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Pool*, 715 S.W.2d at 635; *see also Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) (noting that evidentiary sufficiency must be measured against jury charge). Rather, we conclude that the trial court clearly abused its discretion in substituting its judgment for that of the jury and determining that the jury's verdict was against the great weight and preponderance of the evidence. *See In re E.I. du Pont de Nemours & Co.*, 463 S.W.3d 80, 96 (Tex. App.—Beaumont 2015, orig. proceeding) (concluding that, given conflicting evidence, jury's finding that defendant's negligence did not proximately cause injury in question was "not clearly against the great weight and preponderance of the evidence making it clearly wrong and unjust" and conditionally granting mandamus relief because trial court abused discretion in granting new trial for reason not supported by record).

## CONCLUSION

We conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its order granting a new trial and reinstate its judgment on the jury's verdict that Owens take nothing. The writ will issue only if the trial court fails to do so.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Kelly

Filed: September 10, 2020

11