**Opinion issued October 13, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00820-CV

————————————

**FREDRICK DALE BLEVINS, Appellant**

**V.**

**PEPPER-LAWSON CONSTRUCTION, L.P., WINCO MASONRY, L.P., AND ALEJANDRO SANCHEZ, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-72845**

---

## MEMORANDUM OPINION

Fredrick Dale Blevins appeals a judgment entered on a jury's verdict awarding him $170,850 for injuries he sustained when his truck hit a construction vehicle driven by Alejandro Sanchez, an employee of Winco Masonry, L.P. Blevins argues that the trial court erred by admitting and excluding various types of evidence, that

the defense's closing argument constituted incurable error, that the jury's awards for past medical expenses and past and future disfigurement are against the great weight and preponderance of the evidence, and that the trial court erred by denying his motions for JNOV and new trial. We affirm.

## Background

In October 2012, Blevins was driving on Kingsland Boulevard near Katy Taylor High School around 7:00 p.m. The high school was being renovated, and Winco, a subcontractor of Pepper-Lawson Construction, L.P., the general contractor managing the project, was conducting some masonry work. While attempting to pass a car on Kingsland Boulevard, Blevins hit a construction vehicle, a SkyTrak Telehandler, driven by Sanchez, a Winco employee. Blevins was injured, and sued Sanchez, Winco, and Pepper-Lawson for negligence and gross negligence. At trial, Blevins's theory was that driving the SkyTrak on a public road was negligent because, among other things, it was not fitted with a "road kit," i.e., tail-lights and headlights, and because the defendants failed to warn the public about the SkyTrak.

### *The accident*

At trial, eyewitness Jennifer Bryan testified about the circumstances that led to the accident. Bryan was driving in the left lane on Kingsland Boulevard when she noticed a large, orange construction vehicle in front of her. The road was well-lit, and it was easy to see that the vehicle was driving slowly and slowing down, so

2

Bryan braked. A motorcycle that had been closely following her "zipped around" her in the right lane, followed immediately by a truck driven by Blevins. Both were speeding, and Bryan thought they were racing. Bryan moved into the right lane behind Blevins to pass the construction vehicle. Bryan watched Blevins approach the motorcycle and then shift quickly into the left lane only two-cars' length from the SkyTrak.

It was immediately apparent to Bryan that Blevins was going to hit the SkyTrak, so she stopped her car to avoid the accident. Blevins's truck hit the back right corner of the SkyTrak. Bryan testified that Blevins drove as though he did not see the SkyTrak, although she did not know how that was possible because it "was very big and obvious." She did not think the driver of the SkyTrak bore any fault for the accident.

Blevins agreed that he never saw the SkyTrak before he hit it. According to Blevins's testimony, he passed Bryan and looked to see whether she was texting, because she was driving slowly. While looking at Bryan's car, he turned on his left turn signal, looked at his side mirror, and moved into the left lane in order to turn at the upcoming intersection. He hit the SkyTrak before he saw it.

Sanchez testified that he periodically drove the SkyTrak on Kingsland Boulevard to transfer masonry materials from one part of the site to the other. Sanchez was preparing to turn left when Blevins hit the SkyTrak from behind.

3

Sanchez testified that the SkyTrak had a reflective orange triangle on the back and a strobe light on the top and would have been visible to any drivers on the road.

*The accident's aftermath*

After the accident, Blevins told Sanchez, "I'm sorry. It was my fault." Bryan, who is a registered nurse, assessed Blevins's injuries while the three waited for police and an ambulance to arrive. Bryan noticed that Blevins was "glassy-eyed" and became concerned that Blevins was intoxicated. When officers arrived, Bryan told them that they "might want to think about seeing if he's intoxicated." Sanchez similarly became concerned that Blevins was intoxicated because Blevins tried to start his truck and leave the scene before police arrived, even though the truck was in no condition to be driven.

One of the investigating officers, Officer D. Maxey of the Harris County Constable's Office, testified that he did not notice any impairment or test Blevins for intoxication at the scene. Maxey agreed with Bryan that the street was well-lit and that Blevins should have been able to see the SkyTrak. Maxey also confirmed Sanchez's testimony that the SkyTrak had a reflective triangle on the back and a flashing strobe light on the top.

*The hospital*

Blevins was transported to the hospital by ambulance. The EMT who accompanied him, Lisa Gillette, testified that she did not make any notes indicating

4

whether she believed Blevins was intoxicated. Emergency room doctors told Blevins that his leg was shattered and that he would need multiple surgeries.

Blevins acknowledged that his emergency room medical records indicate that investigating officers wanted him to submit to blood and urine testing for intoxicants. However, Blevins refused to give blood and urine samples without a court order. At trial, Blevins testified that one of the investigating officers and Gillette told him not to submit to testing without a court order. But Gillette testified that she would never tell someone not to take an alcohol or drug test, and Maxey likewise testified that he did not give Blevins such advice. Blevins's emergency room records include the notation "+ETOH," which Gillette testified means "positive for alcohol."

After refusing consent for blood and urine samples, Blevins left the hospital. According to his medical records, the attending physician explained to him that his leg was badly broken and that he needed to be immediately admitted for surgery. Nevertheless, according to Blevins's medical records, he "strongly refused" to stay. Blevins admitted at trial that he was "adamant" about leaving the hospital and was required to sign an acknowledgment that he was leaving against medical advice.

*Surgery and follow-up*

Blevins testified that he was not a particularly good patient. He acknowledged that after he returned to the hospital and underwent surgery, he "frequently"

5

disconnected himself from his IV to leave the hospital to smoke. He was aware that the IVs were necessary to supply him with, among other things, antibiotics to prevent infection in his leg. Blevins admitted that he was told that his continued smoking and leaving the hospital when his leg needed to be elevated could interfere with the healing of his leg, but he told staff he did not care. Blevins also acknowledged that he repeatedly removed a compression device that was intended to improve circulation and reduce swelling of his leg, and he refused physical therapy.

*The verdict*

The jury found that the negligence of Sanchez, Winco, Pepper-Lawson, and Blevins proximately caused the accident. The jury apportioned responsibility in the following manner:

| | |
|---|---|
| Sanchez | 1% |
| Winco | 35% |
| Pepper-Lawson | 15% |
| Blevins | 49% |

The jury awarded Blevins $185,000 in non-economic damages and $150,000 in economic damages. Because the jury did not unanimously agree that Sanchez or Winco were negligent, it did not answer the gross negligence questions.

Blevins moved for JNOV and in the alternative, a new trial. The motions were overruled by operation of law and Blevins appealed.

**Admission and Exclusion of Evidence**

In his first, third, fourth, and fifth issues, Blevins argues that the trial court improperly admitted evidence of his intoxication at the time of the accident and improperly excluded evidence of a subsequent remedial measure, the terms of the SkyTrak lease, and the fact that Sanchez did not have a Texas driver's license.

**A.     Standard of Review**

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *see also Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 630 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A trial court abuses its discretion if it acts without regard to guiding rules or principles. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

Furthermore, we will not overturn the judgment "[u]nless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see also* TEX. R. APP. P. 44.1(a)(1); *Comiskey*, 373 S.W.3d at 630. Evidentiary rulings do not usually cause reversible error unless the judgment turns on the particular evidence that was admitted or excluded. *Benavides v. Cushman*,

*Inc.*, 189 S.W.3d 875, 879 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995)).

Generally, relevant evidence is admissible. *See* TEX. R. EVID. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. A logical connection—either direct or inferential—between the fact offered and the fact to be proved satisfies the relevancy test. *Clark v. Randalls Food*, 317 S.W.3d 351, 357 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Serv. Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex. App.—Dallas 1993, no writ.). But evidence that is otherwise admissible may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403.

## B. Intoxication Evidence

In his first issue, Blevins argues that the trial court erred by admitting evidence that Blevins was intoxicated at the time of the accident. Appellees respond that Blevins waived this complaint because he did not object when this evidence was offered. Appellees also argue that Blevins opened the door to intoxication evidence by being the first to adduce evidence regarding whether he was intoxicated at the time of the accident.

8

## 1. Applicable Law

To preserve error when a trial court admits evidence, a party must make a timely and specific objection or a motion to strike and obtain a ruling. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a). When a trial court hears an objection to offered evidence outside the presence of the jury and rules that such evidence be admitted, the objection is deemed to apply to the evidence when later admitted before the jury without the necessity of repeating the objection. TEX. R. EVID. 103(b).

A trial court's ruling on a motion in limine, however, preserves nothing for review, and to preserve error, a party must object at trial when the evidence is offered. *See In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 760 (Tex. 2013); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 91 (Tex. App.— Houston [14th Dist.] 2004, no pet.). If a motion in limine is improperly overruled, a judgment will not be reversed unless a timely objection is made when the question is asked or the evidence is offered. *Sims v. State*, 816 S.W.2d 502, 504 (Tex. App.— Houston [1st Dist.] 1991, writ denied) (citing *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963)); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex. 1986) (to preserve error when motion in limine is overruled, party must object when harmful question is asked or improper evidence is adduced). And if a party adduces evidence in violation of an order in limine, the

party seeking to exclude the evidence must object immediately after the violation, or the complaint is waived. *In re Toyota Motor Sales*, 407 S.W.3d at 760.

## 2. Analysis

The record shows that the trial court considered Blevins's motions in limine regarding intoxication evidence at a pre-trial hearing. The trial court denied the motions in limine except to the extent that it instructed Appellees' counsel, when referring to the +ETOH notation in Blevins' emergency room records, to "confine [him]self to 'plus ETOH'." At trial, Blevins did not object to any of the questions Appellees asked regarding intoxication, any statements that were made regarding intoxication, or when evidence pertaining to intoxication was adduced, including evidence regarding the +ETOH notation in Blevins's medical records. Appellees therefore argue that Blevins has waived his argument regarding this evidence by failing to object.

Blevins contends that he preserved error regarding this evidence in two ways. First, he argues that his motion for no-evidence summary judgment on Appellee's affirmative defense of contributory negligence, which the trial court denied, preserved the error. However, this motion does not appear in the appellate record. And a ruling on a no-evidence summary judgment is not a ruling on the admissibility of trial evidence.

Blevins also contends that the trial court's ruling on his motion in limine was a pre-trial ruling on the admissibility of evidence, which preserves error without subsequent objection. Blevins argues that this conclusion is supported by his request for relief in his "Trial Brief Regarding Inadmissibility of Alcohol." Although Blevins attached a copy of this brief to his reply brief, it does not appear in the appellate record, and therefore we may not consider it.[1] *See Samara v. Samara*, 52 S.W.3d 455, 456 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (appellate court does not consider documents attached to briefs that are not included in clerk's or reporter's record on appeal); *see also WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("we cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed").

Accordingly, we hold that Blevins failed to preserve his complaint about the admission of evidence of his intoxication at the time of the accident. *See In re Toyota Motor Sales*, 407 S.W.3d at 760; *Pool*, 715 S.W.2d at 637; *Sims*, 816 S.W.2d at 504 (citing *McCardell*, 369 S.W.2d at 335).

We overrule Blevins's first issue.

---

[1] We note that the trial brief indicates that it is "in Support of Plaintiff's Motion in Limine."

11

## C.    Subsequent Remedial Measure

In his third issue, Blevins contends that the trial court improperly excluded as a subsequent remedial measure evidence that Pepper-Lawson changed its policy and began to require Winco to drive a vehicle with flashers behind the Skytrak after the accident. Blevins contends this evidence was admissible to show Pepper-Lawson's control over Winco's safety measures, to contradict claims that it was not feasible to use an escort vehicle, and to impeach defendants' contrary claims.

### 1.    Applicable Law

Generally, evidence of a subsequent remedial measure—a measure that, if taken, would have made an earlier injury or harm less likely to occur—is not admissible to prove negligence or culpable conduct. TEX. R. EVID. 407. But subsequent remedial measures can be used for impeachment or to prove ownership, control, or feasibility of precautionary measures, if controverted. *Id.*

### 2.    Analysis

We conclude that Blevins has not shown that the trial court abused its discretion by determining that Blevins sought to use the subsequent remedial measure for an improper purpose and excluding it. The defendants did not take the position at trial that Pepper-Lawson lacked control over Winco, that using an escort vehicle was infeasible, or that they did not lease or own the SkyTrak. Pepper-Lawson's former senior superintendent, Dave Owens, acknowledged at trial that

12

Pepper-Lawson could have required Winco to use an escort vehicle, and the defendants argued that an escort vehicle was not a necessary safety measure under the circumstances, not that it was infeasible. Accordingly, we hold that the trial court did not abuse its discretion in excluding evidence of the subsequent remedial measure. *See Owens–Corning Fiberglas Corp.*, 972 S.W.2d at 43; *see, e.g.*, *Clark v. Lowe's Home Ctrs., Inc.*, No. 01-06-00689-CV, 2007 WL 4099510, at \*3 (Tex. App.—Houston [1st Dist.] Nov. 15, 2007, no pet.) (mem. op.) (because neither ownership, control, nor feasibility were controverted at trial, trial court properly excluded evidence of subsequent remedial measure).

We overrule Blevins's third issue.

## D.    Skytrak Lease Agreement

In his fourth issue, Blevins contends that the trial court improperly excluded Winco's rental agreement for the Skytrak, which stated that "[t]he Equipment may only be used at Customer's designated Site" and required Winco to make sure the Skytrak was fit for its intended purpose. Blevins contends that the rental agreement proved negligence and gross negligence by showing that Winco had a duty under the lease not to operate the Skytrak on the street and to ensure that if it was on the street, it was fitted with a road kit. Appellees argue that the rental agreement was properly excluded because a violation of a contractual duty by Winco could not give rise to liability to Blevins for his personal injuries.

13

We agree that the trial court did not abuse is discretion in excluding the lease because Winco's breach of a duty imposed by the lease could not give rise to liability to Blevins. Blevins was not a party to the lease, and therefore he could recover for a breach of the lease only if he was a third-party beneficiary, meaning that the parties to the lease intended to secure a benefit to him and entered in the lease directly for his benefit. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *see also MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (for breach of duty in contract to support plaintiff's recovery, plaintiff must be direct beneficiary of contract, not merely incidental beneficiary); *House v. Houston Waterworks Co.*, 31 S.W. 179, 180–81 (Tex. 1895) (breach of duty imposed by contract cannot support negligence claim by third party). Blevins acknowledges that he is not a third-party beneficiary of the lease.

Nevertheless, Blevins argues that the lease was admissible to prove that Winco had actual knowledge that the SkyTrak should not be off the job site or on the road without a road kit. But this is in essence an argument that Winco knew that it had a particular duty under the lease and that it knowingly breached that duty. Blevins cites no authority for his argument that the knowing breach of a contractual duty gives rise to liability to a third party, and we have found none. Accordingly, we hold that the trial court did not abuse its discretion in excluding the rental agreement. *See Dallas Cty. City of Grand Prairie v. Sides*, 430 S.W.3d 649, 653

14

(Tex. App.—Dallas 2014, no pet.) (holding trial court did not abuse discretion by excluding evidence supporting invalid theory of recovery) (citing TEX. R. EVID. 401, 402); *see also Stine*, 80 S.W.3d at 589; *House*, 31 S.W. at 180–81.

We overrule Blevins's fourth issue.

## E. Driver's License

In his fifth issue, Blevins contends that the trial court erred by excluding evidence that Sanchez did not have a driver's license at the time of the accident. Appellees argue that the trial court properly excluded this evidence as irrelevant or unfairly prejudicial and confusing because Blevins's liability theory did not rely upon Sanchez's driving or operation of the SkyTrak, but instead, on the fact that Winco permitted Sanchez to drive the SkyTrak on the street at all.

Although Sanchez did not have a driver's license at the time of the accident, he had been trained and was certified to operate the SkyTrak. There was no evidence or allegation that the accident was caused by Sanchez driving the SkyTrak in an unsafe manner. Thus, Blevins's theory of liability did not turn on the quality of Sanchez's driving. Accordingly, we hold that the trial court did not abuse its discretion by determining that even if relevant, the probative value of this evidence was substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* TEX. R. EVID. 403; *Owens–Corning*, 972 S.W.2d at 43; *see, e.g.*, *Boswell v. Brazos Elec. Power Co-op, Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth

15

1995, writ denied) (affirming trial court's exclusion of evidence as unfairly prejudicial where dispute at trial did not turn on issue implicated by evidence).

We overrule Blevins's fifth issue.

## Incurable Jury Argument

In his second issue, Blevins argues that appellees' counsel's argument to the jury that Blevins's intoxication caused the accident was incurable error.

### A.    Applicable Law

A litigant is entitled to have his counsel argue the facts of the case to the jury. *Clark v. Bres*, 217 S.W.3d 501, 510 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Tex. Sand Co. v. Shield*, 381 S.W.2d 48, 57–58 (Tex. 1964)). Reasonable inferences and deductions from the evidence are permissible in closing argument. *PopCap Games, Inc. v. MumboJumbo, L.L.C.*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied).  Trial counsel should be given wide latitude in arguing the evidence and the reasonable inferences from the evidence to the jury. *Clark*, 217 S.W.3d at 510.

Error as to improper jury argument must ordinarily be preserved by a timely objection which is overruled. *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008) (citing *Tex. Employers' Ins. Ass'n v. Haywood*, 266 S.W.2d 856, 858 (1954)).  Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot

be cured. *Id.* In such instances the argument is incurable and complaint about the argument may be made even though objection was not timely made. *Id.* (first citing TEX. R. CIV. P. 324(b)(5), then citing *Haywood*, 266 S.W.2d at 858).

It is rare that jury argument is incurable. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). "To prevail on a claim that improper argument was incurable, the complaining party generally must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects." *Peñalver*, 256 S.W.3d at 680–81 (citing *Haywood*, 266 S.W.2d at 858).

## B. Analysis

Blevins complains about the following statement by appellees' counsel during closing argument:

> So was he intoxicated that night? Yeah, he was. Did that cause the accident? Yes, it did. Speeding, erratic behavior, alcohol. That's what caused this accident.

Blevins did not object to this statement, but he nevertheless argues that he may complain about it on appeal because it was incurable for two reasons: (1) it violated the trial court's order in limine regarding the +ETOH notation in his medical records, and (2) there was no evidence that he was intoxicated or that intoxication caused the accident. Appellees respond that the claims that Blevins was intoxicated and that

17

his speeding and erratic behavior caused the accident are reasonable inferences and deductions from the evidence admitted at trial.

With respect to the contention that defense counsel's closing argument violated the trial court's order in limine, Blevins was required to object in order to preserve error on this basis. *See In re Toyota Motor Sales*, 407 S.W.3d at 760 (proponent of order in limine must object if order violated or complaint about violation of order is waived). Blevins did not object. Accordingly, Blevins waived any error associated with the alleged violation of the order in limine. *See id.*

With respect to the contention that no evidence supports the argument that intoxication caused the accident, this argument largely turns on the contention that intoxication evidence was improperly admitted—a claim that we have concluded Blevins did not preserve. In fact, ample evidence of intoxication was admitted at trial. Bryan, a nurse, noticed that Blevins was glassy-eyed and believed that he might be intoxicated. Sanchez testified that he also believed Blevins was intoxicated because he tried to drive away in his incapacitated truck before police arrived. Blevins's emergency room records included the notation +ETOH, which Gillette testified means "positive for alcohol." Blevins's records also indicate that he refused to give blood or urine samples. The evidence further showed that Blevins left the hospital almost immediately after the request for blood and urine samples, even

18

though he had a badly broken leg and was warned that leaving could result in much more severe injury and even death.

Defense counsel's argument that Blevins was intoxicated and that the intoxication caused the accident was thus a reasonable inference and deduction from this evidence. *See PopCap Games*, 350 S.W.3d at 721; *Clark*, 217 S.W.3d at 510. Accordingly, we hold that defense counsel's closing argument was permissible, not incurable. *See Peñalver*, 256 S.W.3d at 680–81.

We overrule Blevins's second issue.

## Sufficiency of Damages Evidence

In his sixth and seventh issues, Blevins argues that the jury's awards for past medical expenses and past and future disfigurement are arbitrary and against the great weight and preponderance of the evidence, i.e., not supported by factually-sufficient evidence.

## A. Standard of Review and Applicable Law

In conducting a factual sufficiency review, we "consider and weigh all of the evidence supporting and contradicting the challenged finding and set the finding aside only if the evidence is so contrary to the overwhelming weight of the evidence as to make the finding clearly wrong and manifestly unjust." *McMahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We conduct a factual

19

sufficiency review in light of the jury instructions. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003); *Crounse v. State Farm Mut. Auto. Ins. Co.*, 336 S.W.3d 717, 719 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Unless the record demonstrates otherwise, we presume the jury followed the trial court's instructions. *Golden Eagle Archery*, 116 S.W.3d at 771. We may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

A jury has broad discretion to award damages within the range of evidence presented at trial. *See Swank v. Sverdlin*, 121 S.W.3d 785, 799 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). A jury, however, "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted," and was not controverted. *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). But a jury "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses," so long as the decision to disregard is reasonable. *Id.*

## B.     Past Medical Expenses

In his sixth issue, Blevins argues that the jury's award of $150,000 for past medical expenses is against the overwhelming weight of the evidence. Blevins argues that the jury was required to accept the $231,150.28 figure for past medical

20

expenses reflected in the affidavits he submitted because the appellees did not adduce controverting expert testimony. Appellees respond that the jury properly could have reduced the award based upon evidence that Blevins repeatedly failed to comply with medical directives.

The charge asked the jury to award "[m]edical care expenses actually paid or incurred in the past by or on behalf of Fredrick Dale Blevins." The jury was instructed on mitigation:

> Do not include any amount for any condition resulting from the failure, if any, of Fredrick Dale Blevins to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for an treating his injuries, if any, that resulted from the occurrence in question.

Blevins testified his medical records reflect that he was told that he needed to be immediately admitted for surgery, but that he "strongly refused." Blevins acknowledged that he was "adamant" about leaving the hospital and that he acknowledged in writing that he was leaving against medical advice, even though leaving could result in "worsening of [his] condition and possible death" and "permanent extremity problems/delayed healing."

After Blevins returned to the hospital and underwent surgery, he "frequently" disconnected himself from his IV to leave the hospital to smoke. When he was told not to, Blevins responded, "I'm going to do what I want." The records reflect that medical staff tried to stop Blevins from disconnecting the IVs and that he was

"[e]ducated . . . on the importance of keeping his leg elevated and not smoking . . . [because] smoking slows healing," but Blevins told the medical staff he "does not care." Blevins also acknowledged at trial that, although he was in severe pain, he did not obey medical orders to keep his legs elevated and stay hooked up to the IVs, and that he was informed that smoking would interfere with his leg healing, but continued to smoke. His records also reflect that he repeatedly removed a compression device that was intended to improve circulation and diminish swelling of his leg. The evidence also showed that Blevins refused physical therapy, stating: "I don't need physical therapy. I can move around myself, and I don't want to mess with my leg."

This evidence provides a basis from which the jury could reasonably conclude that Blevins failed to act as a person of ordinary prudence would under the same or similar circumstances, leading to higher medical bills. Accordingly, we hold that the jury's award of $150,000 in past medical expenses is not against the overwhelming weight of the evidence and is supported by factually sufficient evidence. *See Cain*, 709 S.W.2d at 176.

We overrule Blevins's sixth issue.

## C.    Future Disfigurement

In his seventh issue, Blevins argues that the jury's awards for past and future disfigurement are against the great weight of the evidence. Appellees respond that

22

the jury has great discretion in determining disfigurement awards and these awards are supported by the evidence.

## 1. Non-Economic Personal Injury Awards

When someone suffers personal injuries, the damages fall within two broad categories—economic and non-economic damages. *Golden Eagle*, 116 S.W.3d at 763. Traditionally, economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses, while non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement. *Id.* Damages for physical impairment are another type of non-economic damages. *See id.*

When reviewing an award of non-economic damages, courts of appeals should conduct a review of each category of damages awarded, considering the evidence unique to each category, to determine whether the award for that category is against the great weight and preponderance of the evidence. *Id.* at 773. If, considering the evidence unique to each category, the appellate court determines that the award was against the great weight and preponderance of the evidence, the court then considers all of the overlapping evidence, together with the evidence unique to each other category, to determine if the total amount awarded in the overlapping categories is factually sufficient. *Id.*

"Disfigurement has been defined as that which impairs the appearance of a person, or that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Doctor v. Pardue*, 186 S.W.3d 4, 18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). "The matter of future disfigurement is necessarily speculative and there is no mathematical yard stick by which one can measure damages for it." *Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 494 (Tex. App.—Houston [14th Dist.] 1989, no writ). "Each case must be judged on its own facts and considerable discretion must be vested in the jury." *Id.*

### 2. Analysis

The jury awarded Blevins $10,000 for past disfigurement and $0 for future disfigurement.[2] Blevins argues that these awards are arbitrary and against the great weight of the evidence. Blevins contends that he submitted photographs showing severe and permanent scarring of his leg. Appellees respond that the only photographs Blevins submitted were of his leg immediately following surgery, and that Blevins showed his leg to the jury at trial, permitting the jury to make the findings that it did.

---

[2] We note that the jury also awarded Blevins $20,000 for past physical pain and mental anguish and $80,000 for past physical impairment. The jury also awarded Blevins $25,000 for future physical pain and mental anguish and $50,000 for future physical impairment. The jury was instructed to consider each element of damages separately and not to award any sum on any element if it awarded a sum for the same loss under some other element.

24

We conclude that the jury's findings regarding past and future disfigurement are supported by factually sufficient evidence. As with past medical expenses, the jury was instructed on mitigation with respect to the disfigurement awards. With respect to past disfigurement, the jury's $10,000 award is not so against the great weight and preponderance of the evidence as to be wrong and unjust, given that the jury could have reduced the award based on evidence of Blevins's failure to comply with medical directives that could have helped his leg heal faster than it did or scar less than it did. With respect to future disfigurement, the record does not contain any images of Blevins's leg in its current state. Blevins showed his leg to the jury at trial, but we have no way to judge the condition of Blevins's leg or scarring at the time the jury saw it, or how that may have impacted the jury's finding regarding disfigurement from the time of trial forward. And, as is the case with other measures of damages, the jury reasonably could have reduced its award based on considerable evidence of Blevins's failure to mitigate. Accordingly, we have no basis to disturb the jury's award of zero damages for future disfigurement. We hold that factually sufficient evidence supports the jury's award of damages for past and future disfigurement.

We overrule Blevins's seventh issue.

## Motions for JNOV and New Trial

In his eighth issue, Blevins contends that the trial court erred by denying his motions for JNOV and, in the alternative, new trial. Blevins argues that these motions should have been granted for the reasons raised in his other appellate issues. Because we have overruled his other appellate issue and Blevins does not argue any independent basis for this issue, we overrule it.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.