**Opinion issued February 25, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00584-CV

————————————

## IN RE IFTIKHAR AHMED, P.A. AND FARHAN KHAN, M.D., Relators

---

### Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Relators, Iftikhar Ahmed, P.A. and Farhan Khan, M.D., have filed a petition

for writ of mandamus challenging the trial court's order granting a new trial on the

basis of newly discovered evidence.[1] We conditionally grant the petition.

---

[1]   The underlying case is *Lena Savanah, Individually, and as Estate Representative for Decedent Joseph Nicholson, and Ericka Palmer as Next Friend of Minor Child v. Houston Northwest Operating Company, LLC, d/b/a Houston Northwest Medical Center, Iftikhar Ahmed PA, Dr. Bhushan Kukkalli, Lauralyn Denton RN, Wanda Zoeller RN, and Dr. Farhan Khan*, cause number 2016-76925, pending in the 113th District Court of Harris County, Texas, the Honorable Rabeea Collier presiding.

**Background**

On November 8, 2016, Joseph Nicholson was examined at a CVS Minute Clinic where he tested positive for strep throat and was prescribed penicillin for ten days. Five days later, on November 13, 2016, Nicholson went to the emergency room at Houston Northwest Medical Center and reported that he had a sore throat for a week and intermittent fever and chills. In the emergency room, he was treated by Iftikhar Ahmed, a licensed physician's assistant. Ahmed conducted a physical exam and took a medical history. The medical notes state that Nicholson did not have a fever, but that he had enlarged tonsils with exudate and swelling, indicating his strep infection had not been cleared by the penicillin. Ahmed diagnosed Nicholson with tonsillitis, prescribed a new antibiotic and Ibuprofen, and discharged him with instructions to follow up with an ear, nose, and throat specialist in two-to-three days. The next day, Dr. Farhan Khan reviewed and signed off on the chart as part of the hospital's standard quality control protocol.

On November 18, 2016, five days after being seen at the emergency room, EMS was called and found Nicholson unresponsive in his bathroom. He was intubated and taken to the hospital where, despite multiple rounds of medications, he could not be resuscitated. The medical examiner concluded that the primary cause of death was acute myeloid leukemia with involvement of the skin, tonsils, lymph

nodes, epiglottis, spleen, lungs, heart, kidneys, liver, testes, and brain. The secondary finding was sepsis from two strains of bacteria.

*The Underlying Trial*

Nicholson's mother and daughter filed a wrongful death suit against various health care providers and facilities, including Ahmed and Dr. Khan, alleging medical negligence and gross negligence. Plaintiffs asserted that when Nicholson presented to the emergency room with a sore throat, he also had evidence of hemorrhage from facial lesions and black tarry stools. At trial, they provided testimony from Nicholson's mother that he had blood in his stool, as well as an EMS report from November 18, 2016, stating that Nicholson had mentioned this complaint when seen at the emergency room on November 13. Plaintiffs also provided testimony from Nicholson's mother and sister that he had lesions on his face, and the autopsy report, which described facial scabs.

Plaintiffs' sole expert, Dr. Arnold D. Rubin, testified that (1) based on this evidence of bleeding, Nicholson should have had a blood test to determine the cause of the blood loss, and (2) based on the leukemic cells that he believed would have been identified by these tests, Nicholson would have been presumed to have acute promyelocytic leukemia, a specific sub-type of acute myeloid leukemia that Plaintiffs contend can be effectively treated within days. Dr. Rubin conceded that the findings in the autopsy report for the alleged lesions on Nicholson's face were

3

excoriations (scabs) and not petechiae (spots that appear on the skin as a result of bleeding), and it was possible that there was no rash or splotches on his skin at the time of the emergency room visit. Dr. Rubin further conceded that the autopsy did not mention a massive hemorrhage or bleed.

On January 10, 2019, the jury rendered a verdict in favor of the defendants, finding that Nicholson's death was not caused by either negligence or gross negligence. Accordingly, the trial court signed a final take-nothing judgment on March 4, 2019.

*Plaintiffs' Motion for New Trial*

On January 25, 2019, after the jury returned a verdict for the defense, Plaintiffs filed a third-party subpoena to obtain autopsy photographs from the medical examiner. On April 3, 2019, the thirtieth day after judgment was signed, Plaintiffs filed a motion for new trial, asserting that the autopsy photographs warranted a new trial. Relators received service of the motion without any attachments or exhibits. The filing was returned from the e-filing system due to improper formatting and Plaintiffs refiled the motion the next day. On April 4, 2019, Relators received service of the motion with 40 autopsy photograph exhibits attached. Thirty-two of the photographs were file-stamped by the trial court on April 4, 2019, but the motion and the remaining seven photographs were not file-stamped until April 5, 2019.

4

The trial court later granted Plaintiffs' motion to amend the petition to include an affidavit by their counsel, Todd E. Webb, in support of the motion for new trial. The affidavit was notarized on April 4, 2019 but was not filed until May 1, 2019. The affidavit consists of bare assertions that the requirements for a new trial on the ground of newly discovered evidence were met. Specifically, Webb averred the following in his affidavit:

> 4. All allegations made in the attached Motion for New Trial requiring the presentation of evidence are true and correct.
>
> 5. Evidence has come to light since the time of trial therefor [sic] it was impossible to present the evidence before the trial closed.
>
> 6. It was not because of a lack of due diligence that the information did not come sooner.
>
> 7. The new evidence is not cumulative.
>
> 8. The evidence is so material that it would probably produce a different result in a new trial.

The affidavit did not provide any specific details or explanation in support of these assertions.

The trial court granted the motion for new trial on June 12, 2019. The order states in relevant part:

> Plaintiffs brought a survivor and wrongful death claim against Defendants for medical malpractice based upon the untimely death of Joseph Nicholson who died on November 11, 2014. A jury returned a verdict for defendants' [sic] finding the defendants were not negligent. However, after trial, Plaintiffs' [sic] discovered new evidence in the form of over forty autopsy photographs from the Harris County Institute of Forensic

5

Science. The Court finds that the new evidence has been discovered since trial; the failure to discover the evidence prior to trial was not because of lack of due diligence; the evidence is not cumulative; and the evidence is so material that it would probably produce a different verdict. For these reasons, the Court grants Plaintiffs' Motion for New Trial.

This mandamus petition followed.

**Standard of Review for Mandamus Relief**

To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005).

The Texas Supreme Court has recognized that an erroneous grant of a new trial presents an extraordinary circumstance warranting mandamus relief. *See In re Toyota Motor Sales, U.S.A.*, 407 S.W.3d 746, 759 (Tex. 2013) (orig. proceeding). The Court has explained that "absent mandamus review," parties "will seemingly have no appellate review" of orders granting new trials. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209 (Tex. 2009) (orig. proceeding). Even if a party could obtain appellate review of a new-trial order following a second trial, it could not obtain reversal of an unfavorable verdict unless it convinced an

6

appellate court that the granting of the new trial constituted harmful error. *Id.* Furthermore, even if an unfavorable verdict were reversed and rendered in the party's favor, it would have to endure the time and expense of a second trial. *Id.* at 209–10. Thus, parties challenging the granting of a new trial lack an adequate appellate remedy. *Id.* at 210. Because Relators lack an adequate remedy by appeal, we focus on whether the trial court abused its discretion in granting Plaintiffs' motion for new trial.

## Discussion

Relators assert that mandamus relief is warranted for three reasons: (1) the new trial order is void because the motion for new trial was untimely filed and "invalid" for lack of supporting documentation, (2) the new trial order is facially invalid because it is no more than a pro forma template listing the legal standard and lacks the required specificity for granting a new trial, and (3) even if the order were specific enough to support a new trial, the trial court abused its discretion in granting the motion because the reasons articulated are not supported by the underlying record. We address these arguments in turn.

## A. Trial Court's Jurisdiction to Issue New Trial Order

Relators argue that the new trial order is void because the trial court lacked jurisdiction to issue the order. Specifically, Relators assert that the trial court's

plenary power expired thirty days after the judgment was signed because Plaintiffs "failed to timely file a valid motion for new trial."

A trial court has plenary power to grant a new trial within 30 days after signing a judgment. TEX. R. CIV. P. 329b(d); *see In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008) (orig. proceeding). If a motion for new trial is timely filed, then the trial court has plenary power to grant a new trial until 30 days after all such timely motions are overruled, either by written or signed order or by operation of law, whichever occurs first. TEX. R. CIV. P. 329b(e). But if a motion for new trial is not timely filed, the trial court's plenary period only extends until 30 days after the final judgment was signed. TEX. R. CIV. P. 329b(d); *Brookshire*, 250 S.W.3d at 69. A motion for new trial is timely if it is filed within 30 days after the judgment is signed. TEX. R. CIV. P. 329b(a).

Counsel for plaintiffs asserted during a hearing before the trial court that they filed their new trial motion on April 3, 2019, the thirtieth day after the judgment, but the filing was rejected due to formatting errors and the motion was refiled on April 4, 2019. Texas Rule of Civil Procedure 21(f)(6) provides that "[i]f a document is untimely due to a technical failure or a system outage, the filing party may seek appropriate relief from the court." TEX. R. CIV. P. 21(f)(6). In their mandamus petition, Relators argue that (1) Plaintiffs cannot demonstrate that they attempted to file the motion on April 3, 2019, and (2) even if they could, the motion Plaintiffs

attempted to file on April 3, 2019 lacked required supporting documentation to be considered valid.

As to Relators' first argument, the record contains e-filing notifications demonstrating that Plaintiffs attempted to file a motion for new trial on April 3, 2019 and that the filing was rejected due to formatting errors. Relators acknowledged this in their pleadings before the trial court. For instance, in their objection to the motion for new trial, Relators argued that the new trial motion was filed on April 3, 2019, but was invalid because it lacked supporting evidence. Similarly, in opposing Plaintiffs' motion for leave to amend the new trial motion to include evidence, Relators asserted that "Plaintiffs attempted to meet [the April 3, 2019] deadline by filing an unverified, unsubstantiated Motion for New Trial (Motion) on that day, but were forced to refile the following day due to formatting errors." Relators acknowledged that the trial court could evaluate the late evidence under its inherent authority, but argued that the trial court should decline to consider the evidence and deny both the new trial motion and the motion to amend. Relators never disputed the trial court's jurisdiction to consider the motions. To the extent that Relators now dispute that Plaintiffs attempted to file their new trial motion on April 3, 2019 and the motion was rejected, this is a disputed issue of fact that we decline to address in a mandamus proceeding. *See In re Woodfill*, 470 S.W.3d 473, 478 (Tex. 2015) (orig. proceeding).

Relators alternatively argue that, even if the new trial motion was filed on the April 3, 2019 deadline, the trial court still lacked jurisdiction because the motion was invalid. Specifically, Relators argue that the motion was invalid because it lacked supporting evidence when filed and, thus, did not extend the trial court's plenary power under Rule 329b. Relators fail to provide authority for their proposition that the failure to include supporting evidence with a motion for new trial invalidates the motion such that it does not constitute a new trial motion extending the trial court's plenary power. Moreover, this argument runs counter to Relators' arguments to the trial court. In opposing the new trial motion and the motion to amend, Relators did not dispute the trial court's jurisdiction to consider the motions; instead, Relators argued that the trial court had authority to consider late filed evidence in support of the new trial motion but should decline to do so. Although Relators argued to the trial court—as they do in this mandamus petition—that parties should not be allowed to file supporting evidence after the deadline for filing a new trial motion, the decision to consider the evidence is a matter left to the discretion of the trial court. *See Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003).

Relators assert that their challenging of the trial court's jurisdiction on this basis is a matter of first impression in Texas. But we decline Relators' invitation to elevate sufficiency of support for a new trial motion to an issue of jurisdiction, particularly when such a holding is not necessary for us to conclude that mandamus

relief should be granted in this case. As discussed below, unlike Relators' jurisdictional challenge, Relators' challenges to the facial validity and merits of the new trial order—both of which are independent grounds for granting mandamus relief—are supported by well-established authority. Thus, regardless of Relators' jurisdiction argument, we reach the same result—*i.e.*, that the trial court abused its discretion in granting the new trial motion. *See, e.g., Lopez v. Lopez*, 55 S.W.3d 194, 202 (Tex. App.—Corpus Christi-Edinburg 2001, no pet.) (affirming trial court's denial of motion for new trial because, even assuming appellant's argument that motion was timely and trial court had jurisdiction, trial court did not abuse its discretion in denying motion on merits).

Accordingly, we conclude that the trial court had jurisdiction to consider the new trial motion and evaluate the new trial order for an abuse of discretion.

**B.     Review of New Trial Order**

Although trial courts are afforded broad discretion in granting new trials, a trial court's discretion to order a new trial is not "limitless." *Columbia*, 290 S.W.3d at 210, 213; *see also* TEX. CONST. art. 1, § 15 (right to trial by jury "shall remain inviolate"); *In re Wyatt Field Serv. Co.*, 454 S.W.3d 145, 152 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) ("[W]e may not substitute our judgment for that of the trial court. But neither may the trial court substitute its judgment for that of the jury in granting a new trial."). When a trial court orders a new trial after a case

11

has been tried to a jury, the parties "'are entitled to an understandable, reasonably specific explanation why their expectations are frustrated by a jury verdict being disregarded or set aside, the trial process being nullified, and the case having to be retried.'" *In re Bent*, 487 S.W.3d 170, 175–76 (Tex. 2016) (quoting *Columbia*, 290 S.W.3d at 213).

Accordingly, a trial court, in its order granting a new trial, must state a reason for doing so. *Columbia*, 290 S.W.3d at 213. The trial court's "stated reason" must be (1) "legally appropriate," articulating a "well-defined legal standard" or a "defect that probably resulted in an improper verdict," and (2) "specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reason[ ] from the particular facts and circumstances from the case at hand." *Bent*, 487 S.W.3d at 176 (quoting *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (granting mandamus relief where trial court's order premised on bare assertion new trial warranted "in the interests of justice and fairness")). If the trial court's order granting a new trial satisfies these facial requirements, an appellate court may "conduct a merits review of the bases for [the] new trial order" and "grant mandamus relief '[i]f the record does not support the trial court's rationale for ordering a new trial.'" *Bent*, 487 S.W.3d at 173 (quoting *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013)); *see also United Scaffolding*, 377 S.W.3d at 688-89 (trial court's grant of new

trial subject to mandamus review); *In re United Servs. Auto Ass'n*, 466 S.W.3d 162, 170 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

Our review of the new trial order thus involves two steps. First, we review the sufficiency of the trial court's stated reasons for granting the new trial. *United Scaffolding, Inc.*, 377 S.W.3d at 688-89. Second, if the stated reasons are facially valid, we conduct a merits-based review of the reasons. *Toyota*, 407 S.W.3d at 749, 758.

### 1.      Facial Sufficiency of New Trial Order

Relators assert that the new trial order is facially invalid because it is no more than a pro forma template listing the legal standard and lacks the required specificity for granting a new trial. We agree.

A new trial order must provide a clear explanation of why a jury verdict is being set aside. *Columbia*, 290 S.W.3d at 213. The stated reason must be (1) "a reason for which a new trial is legally appropriate" and (2) "specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reason from the particular facts and circumstances of the case at hand." *United Scaffolding*, 377 S.W.3d at 688–689.

In this case, the order meets the first requirement because it provides that a new trial is being granted on the basis of newly discovered evidence, which is a legally appropriate reason for granting a new trial. *See Waffle House, Inc. v.*

13

*Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Although Relators assert that the reasons are not legally appropriate, their arguments pertain to the merits of granting a new trial on the basis of newly discovered evidence rather than facial sufficiency. We thus consider the second requirement and determine whether the trial court's stated reasons for granting the new trial are specific enough to indicate that the trial court derived the articulated reasons from the particular facts and circumstances of the case at hand. *See id.* The new trial order fails this specificity requirement.

A new trial order must provide "an understandable, reasonably specific explanation" for the order. *Columbia*, 290 S.W.3d at 213. In reviewing the trial court's order, we focus "not on the length or detail of the reasons a trial court gives, but on how well those reasons serve the general purpose of assuring the parties that the jury's decision was set aside only after careful thought and for valid reasons." *United Scaffolding*, 377 S.W.3d at 688.

Mandamus relief is appropriate when a trial court abuses its discretion by issuing a new trial order that fails to comply with this facial specificity requirement. The Texas Supreme Court has directed as follows:

> [M]andamus may lie if the order, though rubber-stamped with a valid new-trial rationale, provides little or no insight into the judge's reasoning. Usually, the mere recitation of a legal standard, such as a statement that a finding is against the great weight and preponderance of the evidence, will not suffice. The order must indicate that the trial judge considered the specific facts and circumstances of the case at hand and explain how the evidence (or lack of evidence) undermines the jury's findings. A trial court abuses its discretion if its new-trial

14

order provides no more than a pro forma template rather than the trial judge's analysis. This two-part test adequately ensures that jury verdicts are not overturned without specific and proper reasons, while still maintaining trial courts' discretion in granting new trials.

*Id*. at 689; *see Toyota*, 407 S.W.3d at 757.

Here, the new trial order fails to satisfy the facial specificity requirements set forth in *Columbia* and *United Scaffolding*. The trial court's order is a "pro forma template" stating that the autopsy photographs meet the requirements for granting a new trial on the basis of newly discovered evidence. *United Scaffolding*, 377 S.W.3d at 688. The order provides in relevant part:

> [A]fter trial, Plaintiffs' [sic] discovered new evidence in the form of over forty autopsy photographs from the Harris County Institute of Forensic Science. The Court finds that the new evidence has been discovered since trial; the failure to discover the evidence prior to trial was not because of lack of due diligence; the evidence is not cumulative; and the evidence is so material that it would probably produce a different result.

The mere recitation of the legal standard for granting a new trial on the basis of newly discovered evidence is facially insufficient. *See id*. The order fails to provide insight into the court's reasoning. It provides no "specific facts and circumstances" of the case in support of the ruling. *Id*. In sum, the order fails to assure the parties that the decision to take away a jury verdict was made only after careful thought and for valid reasons. *See id*. at 688.

Accordingly, we conclude that the trial court abused its discretion in issuing a facially insufficient new trial order. When a new trial order fails to satisfy facial

15

requirements, we need not normally conduct a merits review of the order and may grant mandamus relief directing the trial court to vacate its new trial order and issue a new order specifying its reasons for ordering a new trial. *See In re State*, No. 14-18-00773-CV, 2018 WL 5074536, at *1–2 (Tex. App.—Houston [14th Dist.] Oct. 18, 2018, no pet.). In this case, however, ordering the trial court to issue a new order specifying its reasons for granting a new trial on the basis of the autopsy photographs would be futile because the record does not support granting a new trial on the basis of newly discovered evidence. In the interest of judicial efficiency, we address the merits of the new trial order below.

### 2. Merits of New Trial Order

Relators assert that, even if the order were specific enough to support a new trial, the trial court abused its discretion in granting a new trial because the reasons articulated are not supported by the underlying record. We agree.

When a new-trial order satisfies the facial requirements discussed above, appellate courts may "conduct a merits review of the bases for a new trial order" and grant mandamus relief "[i]f the record does not support the trial court's rationale for ordering a new trial." *Toyota*, 407 S.W.3d at 749. "To deny merits-based review would mean that a trial court could set aside a verdict for reasons that are unsupported by the law or the evidence, as long as those reasons are facially valid." *Id.* at 758. We review the merits of a new-trial order under the abuse-of-discretion

16

standard "familiar and inherent to mandamus proceedings." *Bent*, 487 S.W.3d at 177–78.

A party seeking a new trial on grounds of newly discovered evidence must demonstrate that "(1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted." *Waffle House,* 313 S.W.3d at 813; *see Chapman v. Abbot,* 251 S.W.3d 612, 620 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Addressing these elements, Relators assert that the trial court abused its discretion in granting a new trial because the record demonstrates that (1) Plaintiffs would have discovered the autopsy photographs sooner had they acted diligently, (2) the photographs are cumulative of evidence adduced at trial, and (3) the photographs are not so material they would produce a different result in a new trial. We conclude that Plaintiffs failed to demonstrate that the autopsy photographs could not have been discovered sooner with reasonable diligence and further failed to demonstrate that the autopsy photos are not cumulative of other evidence. Because Plaintiffs failed to meet their burden as to these elements, we do not reach the issue of whether the photos would produce a different result if a new trial were granted.

### a) Diligence in Discovering the Autopsy Photographs

A party seeking new trial on the basis of newly discovered evidence must prove that it was diligent in attempting to discover the evidence before trial. *See Waffle House*, 313 S.W.3d at 813; *see also Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex. 1983), *overruled in part on other grounds by Moritz v. Preiss,* 121 S.W.3d 715, 721 (Tex. 2003). "A movant's mere allegations will not suffice to obtain a new trial on the basis of newly discovered evidence; rather, admissible evidence must be introduced at a hearing on the motion for new trial establishing such essential facts as no prior knowledge on the part of the movant, the prior diligence exercised by the movant, and the nature of the newly discovered evidence." *Strong v. Strong*, 350 S.W.3d 759, 772 (Tex. App.—Dallas 2011, pet. denied).

In support of their motion for new trial, Plaintiffs asserted that they did not seek the autopsy photographs until after trial because (1) they did not know that the photographs existed and (2) they did not think the examiner's findings would be challenged. As discussed below, the record fails to demonstrate that Plaintiffs were diligent in seeking the autopsy photographs before trial. Rather, the record demonstrates that Plaintiffs did not seek out the evidence until after trial.

At the outset, we note that Plaintiffs' response to the mandamus petition fails to adequately dispute the lack of diligence. Plaintiffs' discussion of diligence is limited to the following:

18

After close of trial, plaintiff's counsel learned of autopsy photographs that were not discovered until after trial. Dr. Wolf of the Harris County Institute of Forensic Sciences revealed the photographs to plaintiff's counsel after a post-trial discussion about defense witness Dr. Haffar's testimony disputing significant representations of petechiae on Joseph Nicholson's body and bleeding in the period leading to Nicholson's death. When the trial court inquired into plaintiff counsel's due diligence in obtaining the newly discovered autopsy photographs, counsel explained that the autopsy photographs were given to him only because of his post-trial conversation with Dr. Wolf about the defense witnesses' denial of significant representations of symptoms (petechiae and hemorrhaging) associated with AML subtype APL on Nicholson's body.

As with Plaintiffs' arguments to the trial court, this response fails to explain any basis for concluding that the autopsy photographs could not have been discovered prior to the close of trial.

Plaintiffs' only evidence addressing the issue of diligence is an affidavit of their counsel, Todd Webb, which states that "[e]vidence has come to light since the time of trial therefor [sic] it was impossible to present the evidence before the trial closed," and "[i]t was not because of a lack of due diligence that the information did not come to light sooner." These conclusory statements do not illustrate any search for evidence conducted by Plaintiffs to prepare for trial nor do they explain why Plaintiffs could not have discovered the autopsy photographs before trial. *See Burrow v. Arce*, 997 S.W.2d 229, 235–36 (Tex. 1999) (lawyer-affiant must provide factual basis for court to evaluate and cannot merely state legal conclusions); *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 744 (Tex. App.—Houston [1st Dist.]

19

2008, no pet.) (lawyer's affidavit of diligence in support of motion for continuance seeking time for discovery to oppose summary judgment "must state with particularity what diligence was used; conclusory allegations of diligence are not sufficient"). A lawyer–affiant "cannot simply say, 'Take my word for it, I know,'" but must instead provide a factual basis for the court to evaluate. *Burrow*, 997 S.W.2d at 236. Although counsel for Plaintiffs further explained details at the hearing on the new trial motion, an attorney's argument does not constitute evidence and cannot be relied upon to meet Plaintiffs' burden of demonstrating diligence. *See Cleveland v. Taylor*, 397 S.W.3d 683, 693 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("Neither an attorney's arguments nor the pleadings or motions of a party constitute evidence.").

Even if arguments of counsel could be used to satisfy their burden, Plaintiffs' various arguments fail to demonstrate the required diligence. In support of their motion for new trial, Plaintiffs asserted that "[w]hen Plaintiffs' counsel requested the autopsy report and blood slides from the Examiner's office, Plaintiff did not know the pictures existed nor did counsel know the entire file had not been produced." Thus, Plaintiffs only requested specific evidence from the medical examiner—the autopsy report and specimen slides—which they received. Plaintiffs neither allege nor present any evidence that they requested all records related to the autopsy or asked if other records existed while preparing for trial.

Plaintiffs asserted in their pleadings to the trial court that they "did not seek additional information [beyond the autopsy report and blood slides] from the examiners' office because Plaintiffs' did [sic] think the doctors' [sic] would challenge the examiners' findings without medical support."[2] Inaccurately predicting the amount or quality of evidence required to prove one's case does not excuse failing to timely discover evidence. *See New Amsterdam Cas. Co. v. Jordan*, 359 S.W.2d 864, 866 (Tex. 1962) (noting that "public policy, looking to the finality of trials, requires that parties be held to diligence in preparing their cases, and that they shall not be allowed a second trial because they mistook the amount of testimony requisite.") (quoting *Wolf v. Mahan*, 57 Tex. 171, 172 (1882)); *Mitchell v. Bass*, 26 Tex. 372, 376–77 (1862) ("The losing party too often finds it an easy matter to obtain new evidence to supply former deficiencies. It is easy to claim the discovery of new evidence, when the claim is really unfounded, or the result of negligence in the first preparation; and it would be of dangerous consequence to the rights of parties and the safe administration of justice, for the courts to grant new trials to parties merely to correct their own error, when they discovered where they

---

[2] Relators assert that this statement mischaracterizes the defense because they did not challenge the examiner's findings and, instead, relied heavily on the autopsy report. We note Plaintiffs' argument not for its veracity, but only as a purported reason for not seeking the autopsy photographs sooner.

were deficient, and when the requisite industry and vigilance would have supplied the deficiency in time.").

Counsel for Plaintiffs further explained during the hearing on the new trial motion that, after the jury returned a verdict for the defense and "after [counsel] read the case law," Plaintiffs' counsel called the medical examiner to discuss the evidence from trial, ask what other evidence would be available, and inquire about how to request the autopsy report and photographs from the autopsy. Choosing not to conduct these inquiries and research before trial demonstrates a lack of diligence in obtaining the autopsy photographs.

If the movant could have used the same effort and technique to procure the evidence before trial, then the movant has not acted diligently. *Dorbandt v. Jones*, 492 S.W.2d 601, 603 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.) ("It is said that diligence has not been exercised if the same effort used to procure the testimony subsequent to trial would have had the same result if exercised prior to trial."); *Zhao v. Hudgens Group, Inc.*, No. 14-10-00081-CV, 2011 WL 2347709, at *10 (Tex. App.—Houston [14th Dist.] Jun. 7, 2011, no pet.) (affirming denial of new trial because movant failed to demonstrate diligence where "all of the evidence [movant] claims to have discovered post-trial appears to be of types that could have been discovered through the effective use of standard pretrial discovery techniques.").

Here, the same technique used after trial—talking to the medical examiner and asking if other evidence existed—would have fully informed Plaintiffs of the autopsy photographs before trial. *See Dorbandt*, 492 S.W.2d at 603; *Zhao* 2011 WL 2347709, at \*10. In fact, as Relators correctly note in their petition, the medical examiner's publicly available information states that it photographs each autopsy it performs.[3] Furthermore, Texas statutes governing autopsy records expressly provide that photographs are subject to disclosure under a subpoena. TEX. CODE CRIM. PROC. art. 49.25, § 11(a)(1). A diligent search before trial would have informed Plaintiffs not only of the photographs' existence, but also the method for procuring them.

Accordingly, the trial court abused its discretion in granting the motion for new trial because Plaintiffs failed to demonstrate due diligence in seeking the autopsy photographs.

### b) The Autopsy Photographs are Cumulative Evidence

Newly discovered evidence will not support a new trial if it is cumulative of evidence discovered before trial. *Waffle House*, 313 S.W.3d at 813. Evidence is cumulative if the party had access to other evidence that would convey the same facts with the same degree of credibility. *State v. Arizmendi*, 519 S.W.3d 143, 150 (Tex. Crim. App. 2017). If the specific fact or proposition the evidence tends to

---

[3] Medical Examiner Service: Forensic Imaging, HARRIS CTY. INST. OF FORENSIC SCIENCES, https://ifs.harriscountytx.gov/Pages/MedicalExaminerService.aspx.

prove was raised through previously introduced evidence, then the evidence is cumulative. *See New Amsterdam*, 359 S.W.2d at 866.

The autopsy photographs are cumulative of evidence introduced and discussed during trial. Among other things, the autopsy photos are mere visual representations of the detailed descriptions of Nicholson's external appearance and organs provided in the autopsy report. The record demonstrates that the autopsy report was introduced into evidence and extensively discussed in testimony at trial, including expert testimony from plaintiff and defense experts on Nicholson's external appearance.

Plaintiffs' response to the mandamus petition fails to dispute that the autopsy photographs are cumulative of the autopsy report and other evidence introduced at trial. In their trial court pleadings, however, Plaintiffs asserted that the autopsy photographs were not cumulative because "[t]he pictures show various organs and parts of the body that Plaintiff did not have at trial" and "are different pictures." But these arguments only address whether the pictures are new, not whether they are cumulative of the descriptions provided in the autopsy report.

Plaintiffs' own description in their motion for new trial of the purported importance of the autopsy photographs demonstrates that they are cumulative: "The new photographic evidence provides a unique and visual confirmation of the hemorrhaging petechiae, and leukemic cells that was described within the Harris

County Examiner's autopsy report."[4] Confirmatory evidence is cumulative, not new, and Plaintiffs fail to demonstrate that the photographs will show any new facts distinct from those already present in the autopsy report's findings. *See, e.g., Nat'l Bugmobiles, Inc. v. Jobi Properties*, 773 S.W.2d 616, 618 (Tex. App.—Corpus Christi-Edinburg 1989, writ denied) ("[A]ppellant argues in its brief that the document merely 'confirms' other testimony which was admitted. Thus, the excluded document was merely cumulative of other evidence."); *see also Zurita v. Lombana*, 322 S.W.3d 463, 480 n.9 (Tex. App.—Houston [14th Dist.] 2010, pet denied) (noting that lawyer's "confirming" testimony was cumulative).

Contrary to Plaintiffs' assertions, the photographs cannot confirm the presence of leukemic cells. Unmagnified photographs of a body and organs do not show individual cells, much less a particular cancer subtype. Both plaintiff and defense experts acknowledged that there were leukemic cells found in the autopsy. Thus, the photographs do not reveal anything beyond the undisputed evidence.

Plaintiffs also assert that the photos confirm that Nicholson exhibited outward representations of petechia, a characteristic associated with AML subtype APL. But experts on both sides testified at trial that the facial scabs described in the autopsy

---

[4] Plaintiffs similarly assert that "[t]he new evidence is not cumulative of other evidence at trial, nor is it solely impeaching evidence, in that it provides confirmatory evidence that supports a finding of acute myeloid leukemia subtype APL."

report were scratches, not petechiae. Plaintiffs fail to demonstrate that the photographs provide anything more than a visual representation of these descriptions.

Accordingly, trial court abused its discretion in granting the motion for new trial because the autopsy photographs are cumulative evidence.

**Conclusion**

For the forgoing reasons, we conditionally grant the petition for writ of mandamus and direct the trial court to (1) vacate its order granting a new trial and (2) deny the motion for new trial. We are confident that the trial court will promptly comply, and our writ will issue only if it does not. We dismiss any pending motions as moot.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

26